## O. P. WAKEFIELD v. CONNECTICUT AND PASSUMPSIC RIVERS RAIL-ROAD COMPANY.

### Railroad.

The statute, § 55, ch. 28, G. S., requiring the bell on locomotive engines to be rung or the whistle blown for a certain distance at crossings, imposes a duty on railroad companies, not only in reference to persons approaching or in the act of passing the crossing, but in reference to all persons who, being lawfully at or in the vicinity of the crossing, may be subjected to accident and injury by the passing train.

There might be cases where the company would be excused from complying with the statute, but in case of injury by reason of such omission, the company must show that it was reasonable and prudent.

ACTION ON THE CASE. Plea, the general issue, and trial by jury, Caledonia county, June Term, 1861, POLAND, Ch. J., presiding. The plaintiff's evidence tended to prove that on the 16th day of August, 1860, he started from his home in Lyndon with four horses, intending to drive them to Boston for market. His horses were harnessed two abreast to a spring-board wagon. Just south of the village of McIndoes Falls, in Barnet, the highway crosses the railroad of the defendants from the west to the east side, and then runs parallel and quite near the railroad for a considerable distance. The river is near the highway on the east side, and the falls in the river at this place make considerable noise. For some part of the way for one hundred rods south of the crossing, the railroad is in a shallow cut, but not so deep but that a train of cars can be seen from any point in the highway in that distance. The plaintiff drove over the crossing, and had driven about thirty-five rods south, when a train of freight cars came over the railroad from the south, and was within five or six rods of the plaintiff's team when first discovered by himself and his horses. The forward pair of horses were greatly frightened, and instantly turned back and started with such force as to break their fastenings to the other horses, and ran northward toward the crossing at the top of their speed. Just about the time the train was opposite the plaintiff, in the highway, and just as the plaintiff's horses broke away the engineer sounded the whistle and the train continued forward and over the crossing, and while passing the crossing the horses reached it and ran against some part of the

train, whereby they were badly cut and bruised and the harnesses broken and injured. The plaintiff also claimed that by the sudden movement and jerking of his horses when they broke away, one of his thumbs was badly injured. The plaintiff's evidence tended to prove that no bell was rung or whistle was sounded on said train at the distance of eighty rods from said crossing, nor until after the horses had broken away, and that he had no notice of the approach of the train, nor had his horses, until within five or six rods of the train, and that his horses were frightened and broke away so suddenly that he could not control or manage them, but that if the whistle had been sounded eighty rods from the crossing, he should have had notice of the approach of the cars in season to have secured his horses, or at least to have maintained such control of them as to have prevented their getting away from him or upon the crossing.

The defendants gave evidence tending to prove that the usual place of commencing to sound the whistle was ninety-one rods south of the crossing, and that when the engine approached that place the engineer raised his hand for the purpose of sounding the whistle, but at that moment saw the plaintiff and his horses on the highway, some fifty rods distant, and that plaintiff's horses appeared to be frightened by the approach of the cars, and fearing that the sound of the whistle would increase their fright and perhaps add to the danger, he omitted to sound the whistle until the engine had passed the plaintiff, and was about against the horses who were moving towards the crossing, when thinking that the sound of the whistle might cause them to turn or change direction so they would not go upon the crossing, the whistle was then sounded for that purpose; that at the rate the train was running, it appeared that the horses would reach the crossing at about the same moment with the engine, and therefore the engineer increased the speed of the train, and succeeded in getting upon the crossing before the horses, so that the horses struck the sixth car from the engine.

The defendants' counsel claimed that as the plaintiff had already passed the crossing, before the train came within eighty rods of it, and was not after that travelling toward or intending to pass the crossing, the omission to sound the whistle was not a neglect for

which the defendants could be made liable to the plaintiff, even if he suffered a loss by it. And also, that if the engineer omitted to sound the whistle because the plaintiff's horses appeared to be frightened by the train, and because he feared the whistle would frighten them more, and that as to the plaintiff this was a prudent and reasonable course of conduct, the defendants are not liable to the plaintiff for such omission.

The court declined so to charge, but told the jury that though the general purpose of the statute requiring a bell to be rung or a whistle to be sounded eighty rods from every crossing, undoubtedly was to give warning to travellers approaching or upon the crossings, that they might keep out of the way of the train, still if their omission to perform this legal duty really caused the damage the plaintiff sustained, they would be liable therefor, though caused in the manner this was.

And also, that if they found that the omission to sound the whistle at the required distance really caused the injuries the plaintiff sustained, the defendants would be liable therefor, though such omission was for the reason the defendants claimed, and though as to the plaintiff such omission was then apparently prudent and for his benefit. The defendant excepted to the charge, and to the omission to charge as requested. Verdict for the plaintiff.

*B. N. Davis* and *T. P. Redfield,* for the defendants.

The duty created by statute was due to a particular *class,* to wit., travellers approaching or upon the crossing, that they may be . on their guard. G. S. § 55, p. 228.

Any traveller within this class is entitled to the duty towards him, —if not within the class to be thus protected, then the duty is not due him and he cannot claim its protection. *O'Donnel* v. *The Prov. & Worc. R. R.,* 6 R. I. 211 ; see also *Shaw* v. *B. & W. R. R. Co.,* 8 Gray, 46 ; *Galena & Ch. W. R. R. Co.* v. *Jacobs,* 20 Ill. 478 ; *Ricketts* v. *East & West India Dock Co.,* 74 E. C. L. 160 ; *Rice* v. *Montpelier,* 19 Vt. 470 ; *Hyde* v. *Jamaica,* 27 Vt. 444 ; *Jackson* v. *Rutland & Burlington R. R. Co.,* 25 Vt. 150.

There was error in charging that if the omission to sound caused the injury the plaintiff might recover, though such omission was reasonable and prudent, and apparently for the plaintiff's benefit,

The plaintiff must show that the direct and natural tendency of the omission was to cause the injury.

*G. C. & G. W. Cahoon* and *Peck & Fifield*, for the plaintiff.

The statute imposes the absolute duty of ringing the bell or blowing the whistle at eighty rods from the crossing. The scope of the statute can best be ascertained by seeking for the evil which it was intended to cure. That evil was the *danger of collision* at the crossing. Every case, therefore, in which there is or can be danger of collision at the crossing is within the statute. The defendants insist if they owe this duty to those who have passed the crossing, they owe it to persons travelling a highway parallel to the track, though not crossing it. The falacy of this argument is this, as to such persons there is no danger of collision. If there is such danger then they are within the statute, otherwise not. The defendants insist that though they did not ring their bell or blow their whistle, still they acted prudently in this case, and are therefore excused. But to act prudently was simply a common law duty which they were under before the passage of the statute. If they are under no greater duty now, then the statute is repealed. The true theory is this : the statute has imposed a new duty in view of the great danger at crossings, and the defendants are now under both the statutory and common law duty. To ring their bell and act prudently besides. And cited to the point that the question of negligence is one of fact, Red. on Railw., p. 393, § 2, and cases there cited ; *Trow* v. *Vt. C. R. R. Co.*, 24 Vt. 495, and cases there cited ; also see upon point of the defendants' liability, *Sheldon* v. *Fairfax*, 21 Vt. 102 ; *Griffin* v. *Farwell*, 20 Vt. 151 ; *Willard* v. *Newbury*, 22 Vt. 458 ; *Cassedy* v. *Stockbridge*, 21 Vt. 391.

BARRETT, J. By section 55, ch. 28, of the General Statutes, it is required that, on every locomotive engine, the bell shall be rung, or the steam whistle blown, at least eighty rods from the place where the railroad shall pass any road or street on the same grade, and the ringing or blowing shall be continued until the engine shall have passed such crossing.

Two questions are made in this case under this provision of the statute : 1st, whether the plaintiff, having passed the crossing, and got some thirty-five rods from it, on his way, before the engine ar-

rived at the place prescribed, may insist upon having the bell rung or whistle blown, as upon a duty due to himself. It seems plain that the purpose of the law is to secure as much safety as could be done by notice of the approach of an engine, against accidents at and by reason of such crossing. While such accidents are, in the main, likely to happen to persons approaching, and about passing such crossing, yet they are not confined to such persons. And we think it would be an unwarrantable restriction of this provision of the statute, to hold that the duty thereby imposed has reference only to persons approaching, or in the act of passing the crossing. In our judgment that duty exists in reference to all persons who, being lawfully at or in the vicinity of the crossing, may be subjected to accident and injury by the passing of engines at that place.

This case presents a rare and extreme instance of alleged injury resulting from the failure to blow the whistle; and upon the evidence stated in the bill of exceptions, the connection of such failure with what then happened to the plaintiff and his team seems very slight and conjectural. Still, we do not feel warranted in holding that some connection, in the character of cause and effect, did not exist; or, that the plaintiff may not hold the railroad company responsible for any injury caused to him by an unwarrantable omission to ring the bell or blow the whistle in this instance.

The other question is, whether, by force of that provision of the statute, a railroad company is liable, in all cases, for injury that may happen by reason of an omission to ring the bell or blow the whistle within the prescribed limits.

In section 55, the requirement is affirmative and unconditional. But in section 56 it is enacted, that if any railroad corporation shall unreasonably neglect or refuse to comply with the requisitions of the preceding section, they shall forfeit, for every such neglect or refusal, a sum not exceeding two thousand dollars. The corporation could not be subjected to that penalty unless such neglect or refusal should be shown to be *unreasonable*. This clearly implies that in the contemplation of the law there may be cases in which such neglect or refusal would be *reasonable*; and if reasonable the penalty would not be incurred.

Wakefield *v.* Conn. & Pass. R. R. R. Co.

In a prosecution for the penalty, the burden would be upon the prosecutor of showing the neglect or refusal to have been unreasonable ; and, upon first impression, it might seem that the rule, as to the liability of the corporation, is the same *civiliter* as *criminaliter.* But, on very full consideration, the court are unable to adopt that view.

At common law it would be the duty of the corporation to exercise all reasonable care in the running of engines, and in the general use of the railroad ; and to adopt all proper precautions against accidents likely to happen by reason of the road ; and the faulty neglect of the corporation in these respects would, when affirmatively shown, subject them to liability for injuries caused thereby. We think the provision of the 55th section was designed to operate more stringently in this respect than the common law ; and while it was not designed to subject the corporation to civil liability, entirely regardless of the circumstances and occasion of the omission to ring the bell or blow the whistle, in all cases of injury caused by such omission, still it was designed to require, as the general rule, that the bell should be rung or the whistle blown in all cases ; and, in case of injury by reason of an omission so to do, to impose the burden on the corporation of showing that such omission, in the exercise of a sound judgment by the engineer, in view of the condition of things as they existed at the time, was reasonable and prudent. When, therefore, in a case like the present, the plaintiff should show that the alleged injury was caused by such omission, it would not be necessary to his right of recovery that he should take the burden of showing affirmatively that such omission was unreasonable and imprudent ; but it would rest upon the defendant, as matter of defence, to show that it was reasonable and prudent.

This seems to us to secure to individuals and to the public all the protection that is practicable to be afforded in this way, and all that the statute was designed to secure. It seems to us to be not reasonably supposable that the statute was designed to make the doing of those acts a matter of indispensable legal duty in all cases, and under all circumstances ; for it is easy to conceive of cases, and they actually occur, in which the ringing of the bell or the blowing of the whistle would consummate, with disaster, the peril in which the

party was already placed,—disaster which might not have occurred, if the ringing or blowing had been omitted. In such a case it would certainly be, not only unreasonable, but sometimes, under existing circumstances, little short of murderous to ring or blow. It would be a case plainly contemplated by the statute as likely enough to occur; and this is manifested·by the sec. 56, in providing as to the penalty.

In our opinion, therefore, the liability of the corporation should be left to stand upon this, viz: whether, in the judgment of the jury, upon all the evidence, the omission in the given case, in view of the actual condition of things at the time, was reasonable and prudent. This leaves the matter to be settled, not by the judgment of the person running the engine, but by the judgment of the jury, exercised upon the circumstances in which the engineer was placed. at the time he withheld the ringing of the bell or the blowing of the whistle.

This holds the corporation and the engineer, not merely to the exercise of an honest good faith and intention, but to the exercise of reasonable judgment and prudence. It holds the corporation responsible for the competency, in this respect, of the engineers, and at the same time does not preclude the exercise of such judgment and prudence, with a view to relieving impending peril, and avoiding probable disaster to the imperilled party.

Upon the evidence set forth in the bill of exceptions, we think that, as to the subject matter of the second request, the defendants were entitled to a charge substantially conformable to the views of the court as above indicated.

The judgment is reversed, and the case remanded.