## HALL v. BROWN.

*Private railroad—Highway—Obstruction—Negligence.*

The defendants, being owners of a private railroad, with the consent of the W. M. Railroad Corporation, were used to run their cars and engines over a part of the track of said corporation, including a highway crossing. *Held*, that, while thus in occupation of the track, they were to be considered proprietors of the railroad, so far as regards their rights and liabilities in obstructing the crossing, under Gen. Stats., ch. 148, sec. 7.

That statute is directed to the object of protecting travellers against delay from the obstruction of cars, &c., at railroad crossings; its violation, therefore, does not create an absolute liability for damage which is not caused directly by such delay.

The defendants left their cars standing across the highway for more than two minutes. While the highway was thus obstructed, the plaintiff's horse was driven up to the crossing, and, after being delayed more than two minutes, took fright when an engine was attached and the cars started, ran and was killed. *Held*, that the plaintiff must show actual negligence or fault on the part of the defendants before he could recover.

CASE. The declaration is as follows : In a plea of the case for that the said defendants, on, to wit, the ninth day of December, 1872, at a place called Whitefield, to wit, at said Haverhill, being possessed of certain railroad cars and of a certain locomotive steam-engine, carelessly, negligently, wrongfully, and unlawfully put, and caused to be put, the said cars and engine in and upon a certain public highway in said Whitefield, to wit, in said Haverhill, and in the travelled part thereof, leading from the village in said Whitefield, by the defendants' saw-mill, over and across a certain railroad track, to the house of one Aurin M. Chase, in said Whitefield, to wit, in said Haverhill, and therein and upon the said highway, and in the travelled part thereof, carelessly, negligently, wrongfully, and unlawfully kept and continued the said cars and engine a long time, to wit, for ten minutes ; and the said plaintiff, on the same day, to wit, at said Haverhill, was possessed and the owner of a certain horse of great value, to wit, of the value of five hundred dollars ; and on the same day at said Whitefield, to wit, at said Haverhill, one Foster Hall was lawfully driving the said horse, then and there harnessed to a single sleigh, in, upon, and along said highway from said village towards the house of said Chase ; and the said horse then and there, to wit, at said Haverhill, took fright at and was frightened by said cars and engine so then and there negligently, carelessly, wrongfully, and unlawfully, by said defendants, put, kept, and continued in and upon the said highway, and in the travelled part thereof, and, being so frightened, broke away and escaped from said Foster Hall, and ran in, upon, and against a certain building there near by standing and being, and thereby and by reason and by means of the said negligence and carelessness and of the wrongful and unlawful conduct and doings of said defendants, was then and there instantly killed.

The following facts were stated by agreement for the opinion of the court : The defendants have built upon their own land in Whitefield a railroad, upon which they haul by steam-engine and cars their own lumber to their saw-mill, near Whitefield village. They have no charter for their said railroad, nor right or authority to build and operate it, other than such as the common law gives them. Their said railroad near the said saw-mill makes a junction with the White Mountains (N. H.) Railroad ; and said defendants, with the consent and under the authority of said corporation (if said corporation can confer such authority), run their said engine and cars over a part of the said White Mountains (N. H.) Railroad, including the crossing hereinafter mentioned, near the defendants' said saw-mill ; and some one hundred and fifty rods northerly of the junction aforesaid, the highway mentioned in said declaration crosses the railroad track of said corporation. On said ninth day of December the defendants ran their engine, with several lumber cars attached thereto, from their said railroad in and upon the track of said corporation, and there left their said lumber cars standing directly over and upon the said highway-crossing, while the engine, being detached therefrom, was taken some thirty rods further

northerly for water.     While said cars were there standing, said Foster
Hall, who was driving the plaintiff's horse in a single sleigh from said
Whitefield village towards said Chase's, drove up within some three or
four rods of the said crossing, and there stopped five minutes or more
waiting for the removal of the said cars from said crossing so that he
might pass on over it.     At the end of said five minutes, or more, the
said defendants returned with their engine, attached the same to said
cars, and removed them from said crossing, and while so doing the
plaintiff's horse took fright at the said cars and engine, turned about
and escaped from said Foster Hall, and ran some fifteen to twenty
rods against the corner of a building standing close to the highway,
and was thereby killed.

There was no want of ordinary care and prudence upon the part of
said Foster Hall or of the plaintiff, and there was no negligence or
want of ordinary care on the part of the defendants, except as herein
stated.

Foster Hall was at the time aforesaid engaged in his own business,
and has received the sum of twenty dollars as the penalty under the
statute for said detention.

*Carpenter*, for the plaintiff.

*Ray, Drew & Heywood*, for the defendants.

LADD, J.     The agreed case shows that the defendants were in the occu-
pation and use of the track of the White Mountains (N. H.) Railroad
at the time of the accident, with the consent and under the authority
of that corporation, so far as the corporation can confer such authority ;
and we have no difficulty in holding that, for the purposes of this case,
they are to be regarded as entitled to all the rights and subject to all
the liabilities of proprietors of the railroad ; that they come within the
fair meaning of the term proprietors, as used in the statute.

We are also of the opinion that the action is properly brought
against the defendants instead of the railroad corporation ; for it is by
the unlawful act of the defendants, and not of the corporation, that
the plaintiff claims he suffered the damage.

The declaration alleges, in general terms, that the defendants care-
lessly, negligently, wrongfully, and unlawfully put and caused to be
put their cars and engine in and upon the highway, &c., and carelessly,
negligently, wrongfully, and unlawfully kept and continued the same
there for, to wit, ten minutes ; and the special damage alleged, and for
which the plaintiff seeks to recover, is, that his horse became frightened
by said cars and engine, ran and was killed.     The agreed statement of
facts shows that the defendants' cars had been standing directly across
the highway more than two minutes at the time of the accident, and
that the person driving the plaintiff's horse had, in point of fact, been
thereby delayed five minutes or more before the animal took fright and
ran.

Thereupon the plaintiff contends that he is entitled, as matter of law, to recover under his declaration, by virtue of sec. 7 of ch. 148, Gen. Stats. That section is as follows: "No such proprietors shall obstruct, by their engine, cars, or train, any highway more than two minutes at any one time, under penalty of twenty dollars for each offence to the party delayed thereby."

The contention is, that this statute limits the time the defendants might lawfully occupy the highway with their cars, thereby obstructing it; that after the expiration of two minutes, they were there without right and in violation of law, and would therefore be liable absolutely for such special damage as ·resulted to the plaintiff as the direct consequence of the public nuisance thus created.

The true construction of this statute is doubtless of much importance in determining the rights and liabilities of these parties, and it is proper to look at its history.

The original act, approved July 12, 1850 (Laws 1850, ch. 965, secs. 3 and 4), was (sec. 3) " no railroad corporation shall obstruct, by their engine, cars, or train, any highway· in any town or city in this state for a greater length of time than five minutes at any one time. Sec. 4. Any railroad corporation violating [this act] shall be subject to a fine not exceeding twenty dollars, to be recovered, one half for the use of the person complaining, the balance to the use of the county wherein such offence shall have been committed."

This act remained in force without alteration down to the adoption of the General Statutes, where the law in its present form first appears.

As bearing upon the intention of the legislature, it is important to observe that the section under consideration was not reported, by the commissioners appointed to revise the statutes, in its present form, but an important alteration was made by the legislature while the report was under consideration then.

The section as reported reads as follows: "No such proprietors shall obstruct, by their engine, cars, or train, any highway more than two minutes at any one time, under penalty of twenty dollars for each offence." The alteration made by the legislature was the addition of the words " to the party delayed thereby " at the close of the section, making it read " under penalty of twenty dollars for each offence *to the party delayed thereby.*"

The important bearing that these added words have upon the whole scope and operation of the statute is obvious, and their significance is enhanced by the circumstances under which they appear to have been introduced.

The statute, as it existed from 1850 to 1868, clearly prohibited the obstruction of a highway for more than five minutes at any one time, in general terms, under all circumstances, and affixed a penalty to the violation of its provisions, to be recovered, one half to the complainant and one half to the county, without reference to whether any person was delayed or injured by such obstruction or not.

But the act, as it stands in the General Statutes, will not bear any

such construction. The penalty is there given expressly to the party delayed, and to no one else; and we think it is impossible to hold that under this act the penalty would be incurred in case a railroad should, by their cars, &c., obstruct an unfrequented highway for more than two minutes, and nobody was delayed thereby. If that be so, no offence or violation of law would, in such case, be committed; that is, the intention of the legislature being clearly expressed, that no one but the party delayed shall be entitled to the penalty, it follows that if no one is delayed, there being no one to complain or to receive the penalty, it is absurd to say that a penalty has been incurred. *Gale* v. *Lisbon*, 52 N. H. 174.

We are thus brought, almost irresistibly, as it would seem, to the conclusion that the object of the statute is to prevent the delay of travellers on the highway by the obstruction of cars, &c., at railroad crossings, for a longer period than two minutes at any one time.

Railroads, of course, have a right to cross highways with their engines and cars, in the same way that travellers on the common highways have a right to cross railroads with their vehicles and teams. No distinction in this respect is seen between the two. The right of neither, so far as we can see, is, by our statutes, made subject or inferior to the right of the other. Both cannot occupy the same point at the same time, and each must doubtless govern his conduct, with a reasonable deference to the rights of the other, as regards the use to which each may temporarily appropriate the point of intersection. To illustrate: persons in charge of a locomotive steam-engine and train of cars, approaching and passing over a highway, must graduate their care and circumspection by a due consideration of the immense and dangerous force they have set in operation and which is under their control; while a traveller on the highway, approaching and passing over a railroad, must have due regard to the obvious fact that a train of cars cannot be brought to a stand as quickly, or started, when at rest, with as little noise, as an ordinary vehicle drawn by oxen or horses on the highway. Aside from the statute upon which the plaintiff here relies, the public and the railroad have a common and equal right of passage over the ground covered by the intersection of the two roads, to be exercised by each with a due regard to the rights of the other, all the circumstances under which each is acting being duly regarded by both. The statute, as we have already seen, looks to the prevention of delay by railroads of public travel on the highways; and we are now brought to consider what appears to be the main question in the case, namely, whether the statute alone furnishes the ground for a recovery of special damage of another sort than that caused by delay, when the obstruction has been continued until the penalty is incurred; and we think it does not.

The plaintiff's damage consists in the loss of his horse, and not in its delay or the delay of the driver by the obstruction. There is nothing to show that it was the delay which caused the animal's death. The mischief against which the statute was designed to afford protec-

tion was delay, and not the consequence of fright to the horse of a traveller. This is the reason, in a word, upon which our conclusion as to this question is placed. Had the statute remained as it was before the revision,—that is, had railroads been forbidden in general terms under a penalty to obstruct highways by their engines, &c., beyond a stated period,—a different question would be presented. So, if the damage alleged were the delay, or perhaps an injury caused directly by the delay, then, inasmuch as the plaintiff's right to pass was in no way dependent on the statute which restricts the defendants' right to obstruct his passage, it is clear, I suppose, that his compensation would not be limited to the penalty imposed by the statute. It is said that where a statute creates a new right and imposes a new correlative duty, and at the same time furnishes a remedy for the enforcement of such new right, the statute remedy alone must be pursued; but whether that be universally true or not, it is plain that where, as in this case, a *right* and a *duty* exist outside the statute, the injured party may recover his actual special damage, although the legislature by way of additional security have imposed a penalty to insure the performance of the duty. Whether in such case the statute alone furnishes the ground for a recovery of special damage caused by a breach of the very duty imposed by it, or whether it is evidence for the jury in a suit for such special damage, need not now be considered. See *Blamires* v. *The L. & Y. Railway Co.*, Law Rep., 8 Exch. 283.

The difficulty here is, that the injury complained of does not appear to be at all within the mischief against which the act is aimed. The statute looks entirely in a different direction, and, at the utmost, creates an absolute right to recover only such damages as come within its scope, namely, those arising from delay. Whether the absolute right of recovery created by it extends in amount beyond the penalty, or whether, in order to recover special damages caused by delay, the plaintiff must, by his proof, bring the case within the doctrines of the common law by showing negligence or other wrongful act or omission by the defendants, as before remarked, we need not now inquire.

This view may be illustrated, and is, I think, fully sustained, by the recent English case of *Gorris* v. *Scott*, Law Rep., 9 Exch. 125. That was an action to recover the value of certain sheep which the defendant undertook to carry on shipboard for the plaintiff from Hamburg to Newcastle. On the voyage the sheep were washed overboard and lost. The plaintiff in his declaration put his right to recover upon certain orders of the privy council, made in the exercise of the powers and authorities vested in them by section 75 of an act of parliament, passed in 1869, called the contagious diseases [animals] act. The preamble to that act was as follows : " Whereas it is expedient to confer on her majesty's most honorable privy council powers to take such measures as may appear from time to time necessary to prevent the introduction into Great Britain of contagious or infectious diseases among cattle, sheep, and other animals, and it is further expedient to provide against the spreading of such diseases in Great Britain," &c. By sec-

tion 75 of the act, power was conferred upon the privy council to make such orders as they think expedient "For insuring for animals brought by sea to ports in Great Britain a proper supply of food and water during the passage, and on landing. For protecting such animals from unnecessary suffering during the passage, and on landing [then follow certain inland purposes] : And, generally, any orders whatsoever which they may think expedient to make for the better execution of this act, or for the purpose of in any manner preventing the introduction or spreading of contagious or infectious disease among animals in Great Britain."

Under the authority of the act certain orders were made; amongst others, an order by which any ship bringing sheep or cattle from any foreign port to ports in Great Britain is to have the place occupied by such animals divided into pens of certain dimensions, and the floor of such pens furnished with battens or foot-holds. A penalty not exceeding £20 was imposed for a violation of the act, or the orders made under it. The declaration alleged that the loss of the sheep was caused by the defendant's violation of the order, in not having the place on board the vessel, which was occupied by the sheep, divided into pens, and in not having the floor furnished with battens or other proper foot-holds ; and there was a demurrer. The court held that the object of the statute and order being to prevent the spread of contagious disease among animals, and not to protect them against perils of the sea, the plaintiffs could not recover. And this is put upon the ground, that when a statute creates a duty with the object of preventing a mischief of a particular kind, a person who, by reason of another's neglect of the statutory duty, suffers a loss of a different kind, is not entitled to maintain an action in respect of such loss. KELLY, C. B., closes his quite elaborate opinion in this way : "What, then, are these purposes [the purposes of the act and orders] ? They are ' for securing for animals brought by sea to ports in Great Britain a proper supply of food and water during the passage and on landing;' 'for protecting such animals from unnecessary suffering during the passage and on landing,' and so forth ; all the purposes enumerated being calculated and directed to the prevention of disease, and none of them having any relation whatever to the danger of loss by the perils of the sea. That being so, if by reason of the default in question the plaintiffs' sheep had been overcrowded, or had been caused unnecessary suffering, and so had arrived in this country in a state of disease, I do not say that they might not have maintained this action. But the damage complained of here is something totally apart from the object of the act of parliament, and it is in accordance with all the authorities to say that the action is not maintainable."

This case is directly in point, provided we are right in our view that the imposition of a penalty, only when some one is delayed by the obstruction, shows an intention by the legislature to aim this statute exclusively against the mischief of delay ; and of this we are unable to entertain any doubt, for the reasons already given.

It will be observed that this case really goes somewhat further than we go here, because there the damage was, in fact, caused directly by the defendants' violation of the order which required the sheep to be put in pens, &c.

The distinction is well marked by another recent English case, which may be briefly referred to, — *Atkinson* v. *Newcastle & Gateshead Waterworks Co.*, Law Rep., 6 Exch. 404. In that case, " by sec. 42 of the Waterworks Clauses Act, 1847, the undertakers are to keep their pipes, to which fire-plugs are fixed, constantly charged with water at a certain pressure, and are to allow all persons, at all times, to use the same for extinguishing fire without compensation. By section 43 a penalty of £10, recoverable by a common informer, is imposed on the undertakers for a neglect of this duty. On demurrer to a declaration, by which the plaintiff claimed damages against the defendants *(a water company)* for not keeping their pipes charged as required by section 42, whereby his premises were burnt down,—*held*, that the declaration was good." The same learned judge, who has already been quoted in *Gorris* v. *Smith*, C. B. KELLY, begins his opinion by saying " this case appears to me altogether free from doubt. An act of parliament imposes upon this company the general duty of providing water to meet the wants of the people of Newcastle ; and among other duties, there is specifically imposed upon them that of keeping the water in the pipes connected with the fire-plugs (to be placed by them in certain positions) at such a level as will enable the water to go to the top story of the highest houses within the district. They have failed in the performance of this duty : the plaintiff brings this action for injury which he has sustained by reason of that failure, and the question is whether he can maintain it. It is contended that he cannot, because the act imposes penalties for the non-performance of the duty. I will not go further into the authorities or principles of law applicable to the question than to refer to the case of *Couch* v. *Steel*, 3 E. & B. 402, where the judgment of Lord CAMPBELL (which was the judgment of the court) really comprises the whole law on the subject." The learned chief baron holds decidedly that the action may be maintained.

It will be seen that the distinction between these two cases is, that in one, the last, the special damage suffered by the plaintiff was one against which it was the clear purpose of the statute to afford protection, while in the other the special damage was of a different character, and not within the mischiefs against which the act was directed, although caused by its violation.

Other cases might be cited which support more or less directly the view we have undertaken to explain. For example : in *Stevens* v. *Jeacoke*, 11 Q. B. 731, there was an act of parliament called the St. Ives Bay Pilchard Fishery Act, whereby certain fishing stems or stations were bounded and defined, and the interference of one boat with another forbidden under penalty of a forfeiture of the fish taken by the party interfering and £50. The plaintiff declared in case, setting forth an interference by the defendant, and describing his act in such

way as to bring it within the statutory prohibition. On motion in arrest of judgment, the court held that the declaration showed no cause of action, inasmuch as the plaintiff stated no interference with any common law right (the right to fish not being limited by the common law), and the statute having only imposed a particular penalty for the act done, and having therefore given no general right of action.

In *Metallic Compression Casting Co.* v. *Fitchburg Railroad Co.*, 109 Mass. 277, it appeared that in order to obtain the only available supply of water to throw upon a building on fire, it was necessary to lay a hose across a railroad. The water was applied from the hose to the fire, and had diminished and would probably have extinguished it, but servants of the railroad corporation ran a train over the hose and severed it, and therefore cut off the water from the fire, which then consumed the building. The railroad was crossed by another at grade, a few hundred feet before the place where the hose was severed, and the train was not stopped before the crossing, as required by Gen. Stats., ch. 63, sec. 93. In an action brought by the owner of the building against the railroad corporation, it was held that the violation of the statute did not affect the defendants' liability, though they were held liable upon common law principles. CHAPMAN, C. J., in delivering the opinion of the court, says,—"One of the grounds taken by the plaintiffs is, that the defendants' train did not stop before crossing the Grand Junction Railroad, and thereby violated the Gen. Stats., ch. 63, sec. 93, which requires that trains shall be stopped before crossing another railroad at grade. The point of this crossing was in sight of the fire, and a few hundred feet west of it; but the object of the statute was solely to prevent the collision of trains at crossings, and had no reference to the extinguishment of fires. It is not applicable to this case." See, also, *Wakefield* v. *Conn. & Pass. R. R. R. Co.*, 37 Vt. 330.

It has been contended by the defendants, that even admitting their cars to have been placed across the road in such way, or to have been suffered to remain there for such a length of time, that they had become and at the time of the accident were a nuisance or illegal obstruction upon common law principles, still the plaintiff is not entitled to recover upon the facts stated, because they show no logical connection between the illegal act of the defendants in creating the obstruction and the damage complained of; that the proximate cause of the injury was their legal act in removing the obstruction, and not their illegal act in creating or maintaining it. It is doubtless true, that the act of removing the obstruction in a suitable and proper manner cannot be regarded as in itself illegal. The cars could not be removed without being put in motion, and the only convenient if not the only practicable way of communicating to them the necessary motion was by the use of the locomotive.

Hence there is a degree of plausibility in the suggestion, that allowing a recovery for damage caused by the train while in process of removal would be allowing a recovery for the consequences of a legal and not of an illegal act. But we think this position cannot be sus-

tained. In case the cars should be found by the jury to have consti-
tuted an illegal obstruction by reason of having been improperly, that
is, carelessly or negligently, left there in the first place, or by reason of
having been permitted to remain there for an unreasonable length of
time, or for any other reason that may appear on the trial, when all the
circumstances of the transaction are placed before the jury, then we
think it is of no consequence whether they were in a state of rest or
motion when they caused the mischief.   Noise and motion were neces-
sary incidents of their removal, and are to be regarded as nothing more
than attributes and qualities of the obstruction which the defendants
had illegally caused, for the direct and natural consequences of which
they are just as much liable as for the consequences of some other
quality of the thing constituting the obstruction, which has no connec-
tion with the legal act of removal.   Our conclusion is, that the statute
does not give the plaintiff an absolute and unqualified right to recover,
as he contends, but that he must prove his declaration by showing ac-
tual fault or negligence on the part of the defendants sufficient to sus-
tain his action at common law.

*Case discharged.*