## THE PENNSYLVANIA COMPANY

### v.

## PETER BACKES.

*Railroads—Negligence—Personal Injuries—Crossings—Failure to Signal— Excessive Speed — Fellow-Servants — Ordinance— Evidence— Preponderance—Instructions.*

1.   While a jury is required to act on the preponderance of evidence, a preponderance for the appellant is not, in a court of review, ground for reversal.

2.   Liability upon the part of railroad companies for failure to give the statutory signal is not limited to injuries caused upon a crossing, alone, but

also attaches where the same occurred within a short distance thereof, but still in the highway along which the tracks are laid.

3. The statute applies to crossings in cities.

4. The statement of counsel in his opening as to a certain matter can not be looked upon as evidence.

5. In an action brought to recover from a railroad company. for personal injuries alleged to have occurred through its negligence, this court declines, in view of the evidence, to disturb the verdict in behalf of the plaintiff.

[Opinion filed February 12, 1890.]

APPEAL from the Circuit Court of Cook County; the Hon. FRANK BAKER, Judge, presiding.

Mr. GEORGE WILLARD, for appellant.

Messrs. MERRITT STARR and JAMES B. MUIR, for appellee.

GARNETT, J.   On December 17, 1887, appellee lost his arm, which he charged in his declaration to have happened through appellant's negligence.   He was a laborer in the employ of the Star & Crescent Flour Mills Company.   The mill of the company is situated at the southeast corner of Randolph and West Water streets in Chicago, the west line of the building being flush with the east line of West Water street.   The structure is 115 feet long, north and south, having adjoining its whole length on the west a wooden shed about twelve feet wide, with openings therein to receive wheat and coal from freight cars.   Just west of the shed, at a convenient distance for unloading the cars, is a switch track running from Randolph street south to a point eighty-seven feet north of the north line of Washington street, and at that point the switch track connects with a main track to the west, laid north and south in West Water street.   In the switch track, opposite the opening in the shed for receiving wheat from the freight cars, was a scale thirty feet long, which was used to weigh the cars of grain.   The scale is 278 feet north of the point where the switch track is connected with the main track. The business of appellee was to assist in moving the freight cars upon the scale (that being necessary at times, when they were left by the switch engine partly or wholly off

the scale platform), and shoveling the wheat from them into the shed.  On the trial of the case evidence was given tending to prove these facts: that in the forenoon of the day named five cars were standing on the switch track, the north one being empty, the next two loaded with wheat, the next one empty, the next one loaded with coal, but none of them being coupled together.  The situation of the cars was such that the wheat cars could not be unloaded until the empty cars were switched out, and so Scanlan, the foreman of the mill hands, told Laycock, the foreman of appellant's switching crew, that they were blocked up, and asked him if he " would make a switch for him—throw out a couple of cars."  Laycock asked him if the men had quit work, and he said they had. As soon as the engine came up it was coupled to the switch car and then all five of the cars were coupled; they were drawn through the switch; the north empty car was then detached and left on the main track, and the loaded wheat cars were put in on the switch track.  The other empty car was then switched out and left on the main track, and the engine with the coal car run south.  While this switching was going on appellee and his two co-employes were inside the mill, but when the wheat cars had come in upon the switch track, Scanlan told the men to come out.  Appellee seems not to have heard the order, but seeing his fellow-workmen go he followed them.  The two wheat cars stood on the track with a space of about fifteen feet between them, the southernmost lacking about three feet of being in position for weighing.  Before beginning to move that car upon the scale, appellee testified that he looked south, and there was no car in sight.  In this he is corroborated by the witness Ackert, who testified that after the last empty car was left on the main track, the engine took a run about a block south of Washington street, and by the witness Leonhart, who testified that when they went to work, the track was clear.  Supposing the switching was at an end, appellee applied his bar to the northwest wheel of the southernmost wheat car, while his companions were working at the wheels of the other truck.  After they had been at work in that way from three to five minutes, the

loaded car of coal, weighing from 50,000 to 60,000 pounds
was uncoupled and thrown upon the switch track (unattended
by a brakeman), by a kick from the engine, with such force
that it struck the car appellee was trying to move, and sent it
against the other wheat car. By the collision, appellee's arm
was thrown between the cars and crushed so that amputation
thereof became necessary. The jury found defendant guilty
and assessed the damages at $6,000. Judgment was rendered
thereon, and defendant appeals.

Appellant insists that it is not chargeable with negligence
in this case, because Laycock and his men were acting in obe-
dience to appellee's foreman, who had stated that the mill
hands had quit work. The argument is that it was reason-
able for the switching crew to suppose the workmen would
not resume work without first giving notice to the switchmen
of their intention so to do, and as no such notice was given,
appellee proceeded at his own peril (so far at least as the appel-
lant is concerned), if the switching was done in the usual way.
Whether it was done in the usual way is a point upon which
there is a conflict in the evidence. But conceding that it was
done as usual, there is one feature of the case which this argu-
ment neglects. The request of Scanlan was to "make a
switch for him—throw out a couple of cars." What was meant
by that was left for the jury to spell out. But the most
reasonable construction is that it was a request to separate
the two loaded wheat cars from the rest of the train, and
leave them on the switch track where they could be conven-
iently unloaded. If that was the meaning, the service asked
for was completed before the coal car was kicked in. That
was the understanding of Scanlan at the time, for as soon as
the wheat cars came up he told the men to go to work. It is
not probable he would have ordered them to work in a post of
such manifest danger if he had supposed the switching was not
at an end. By his order to them he said, as plainly as though
the words had been spoken, "I ordered a couple of cars
switched in. The work is done and you can now safely go
to work." Then the disappearance of the engine and coal car
was a circumstance which Scanlan might well rely upon as

Penn. Co. v. Backes.

indicating that Laycock understood his order in the same way and so had hauled the coal car to some other place. Whether that car was loaded with coal for the mill does not distinctly appear from the evidence. The fact that it was on the switch with other cars whose contents belonged to the mill company, could, at most, only raise a presumption that it belonged there. But there is nothing whatever to show that Scanlan or any of his men had any notice that the coal was intended for the mill. They may have supposed that it was there merely for convenience of the railway, and that the company had taken it to its proper destination.

If the order was to switch in a couple of cars for unloading, the duty of giving notice of further switching attached to appellant's servant. He knew, or could easily have ascertained, which of the cars were loaded, which were empty, and whether he was expected to bring back the coal car. If he intended to bring it back, without being requested to do so, he should have given notice of his intention.

The evidence also tends to show that at the time of the injury to appellee the speed of the coal car over the switch track exceeded six miles per hour, contrary to the ordinance of the city of Chicago, and that the engine bell was not ringing at the time of the injury. Appellant says that an examination of the evidence will not show a preponderance of evidence in appellee's favor on these points. A jury is required to act on the preponderance of evidence, but in a court of review a mere preponderance of evidence for appellant is not ground for reversal. The relations of the parties were such, in this case, that the appellant insists Backes and itself were fellow-servants of the mill company, and that no employe is liable in damages to a co-employe of the same master, for injuries received through defendant's obedience, in the usual manner, to the master's directions. If the proposition is true, the assumption that the coal car was switched in the usual manner is one of its necessary elements, and the evidence bearing on the point is conflicting, thereby leaving the verdict of the jury conclusive against appellant on this question of fact. To cover this point, appellant asked the court to instruct the jury as follows:

"The jury are instructed that the plaintiff, in undertaking the work for the Star & Crescent Mills Company, and therein to work on the side-track of said company, assumed himself all the risk of the injury while working in that capacity, which existed when the business was carried on in the usual and ordinary way," which the court modified by writing at the end thereof the words, "and with reasonable care." With that addition no fault can be found. The work might have been done in the usual way and still may have been in reckless disregard of life. The usual way may have been to "kick" in the cars when appellant's servants were informed the mill hands were not at work. But there is no evidence tending to prove that it was usual to "kick" a car in after all the switching requested had been done. The mechanical execution of the work may have been in the usual manner, and still it may have been untimely. If the car was sent in without notice, when notice should have been given, the jury should not have been instructed so as to excuse appellant, without reference to its own neglect.

The declaration consisted of four counts, the first charging defendant with running the car at a high and unlawful rate of speed, and with negligently driving the same against the plaintiff; the second charging the defendant with a violation of that section of the statute which requires blowing of the whistle or ringing of the bell at a distance of eighty rods from highway crossings; the third charging a violation of the city ordinance in failing to ring the bell or blow the whistle, and the fourth charging that the coal car was running at a greater speed than six miles an hour, contrary to the city ordinance. The court instructed the jury, at request of plaintiff, that if they believed from the evidence that plaintiff, without fault or negligence on his part, was injured by the wrongful acts of defendant, as alleged in the declaration, they should find defendant guilty. Appellant complains of this instruction, because it says that the jury were thereby authorized to find a verdict under either the second, third or fourth count, but that the evidence shows neither the statute nor the ordinances apply to the facts of this case. Two points are made

against the application of the statute: 1. That the injury to appellee did not happen on the Randolph street crossing. 2. That the crossing is made by means of a viaduct, and so the statutory signals are dispensed with. In fact, the evidence tends to prove that appellee was within a very few feet of the south line of Randolph street when his arm was caught. We think it will not do to say that the statute furnishes no protection to one who is a trifling distance to one side of the crossing, but still is in the highway along which the tracks are laid. That liability for failure to give the statutory signal is not limited to injuries caused upon the crossing, is shown by the case of Norton v. Eastern Railroad Company, 113 Mass. 366; see, also, Wakefield v. Conn. & Pass. R. R. Co., 37 Vt. 330. As to the second point, it is sufficient to say that no evidence in the case tends to prove that the crossing is by viaduct. The statement of defendant's counsel to that effect in opening the case to the jury can not be seriously considered as evidence.

If it be said that the statute does not apply to street crossings in cities, we answer that the contrary has been held by the Supreme Court of Illinois, in Mobile & Ohio R. R. Co. v. Davis, 129 Ill. 146.

That appellant was bound to obey the city ordinances at the time and place in question, we perceive no reason to doubt. Its tracks, where the injury occurred, were in a public street. Appellee was rightfully there. Such portion of the street as was not occupied by the tracks and cars was still a public highway, free to all persons. And in the case of appellee, under the circumstances shown by the evidence, he must be regarded as having implied license from appellant, so far as such license may have been necessary, to be where he was for the purpose of performing his duties. In cases of this character, to slacken the requirements of the ordinance, which imposes the duty of continuous ringing of the bell within the city limits, would leave scant security for the lives of those who are situated as appellee was when he was hurt.

Counsel for appellant complains of the second instruction given for plaintiff, on the ground that it sums up all or a num-

ber of the facts which the evidence tends to prove on one side, and omits all on the other side. Just what he thinks should have been added to the instruction is not stated in his brief, and upon examination of it, we think it free from any reasonable objection.

We do not wish to be understood as conceding that the facts stated in this opinion created the relation of fellow-servants of the mill company, between appellant and appellee, or that appellant was not required to exercise ordinary and reasonable care in switching the cars, although the service was requested by the foreman of the mill hands, and the work may have been done in the usual manner and at the proper time.

The judgment is affirmed.

*Judgment affirmed.*