## LAIRD v. RAILROAD.

A building placed on land of another with the right of removal is a personal chattel, and an action can be maintained in the courts of this state to recover damages for an injury to the plaintiff's building standing on land of another in Vermont.

The Vermont statute, which provides that "when any injury is done to a building or other property by fire communicated by a locomotive engine of any railroad corporation, the said corporation shall be responsible in damages for such injury, unless they shall show that they have used all due caution and diligence, and employed suitable expedients to prevent such injury," imposes a more stringent liability than the common law; and in an action brought in this state to recover damages for injury caused to personal property by fire from a railroad locomotive engine in Vermont, the liability of the railroad is determined by the law of Vermont; and the doctrine of contributory negligence does not apply.

CASE, for burning the plaintiff's buildings and goods, situate in Barnet, Vt., on the line of the defendants' road, by sparks communicated from the defendants' locomotives, May 11, 1872.

April 17, 1851, the defendants leased to one Isaac Watts the land on which there was a two-story building, occupied as a store, immediately north of their passenger station in Barnet, and in line with the same on the westerly side of their track, and about four feet from the same. The lease stipulated that the building should "be occupied as a store for mercantile transactions by said Watts;" and, further, that the lease should "be null and void whenever the said store shall be converted to any other use than of merchandise without the consent of the company." The leasehold interest of the premises through sundry mesne conveyances came to the plaintiff Nov. 2, 1870, subject to the conditions of the lease. At the time of the destruction of the building by fire it was occupied by the plaintiff as a country store, except a portion of the second story, which was occupied by the plaintiff's parents as a dwelling. The building was totally consumed; a portion of the plaintiff's goods and a portion of his parents' furniture and family stores were also consumed; also a shed near by belonging to the plaintiff, with several cords of wood stored therein, upon the defendants' land. It appeared that there was a cellar under the store buildings, which rested upon a brick foundation, affixed to the land in the usual manner.

The question was raised whether the defendants' liability was determined by the common law, or under c. 148, s. 8, Gen. St. New Hampshire, or c. 28, s. 78, Gen. St. Vermont, which is,—
"When any injury is done to a building or other property by fire communicated by a locomotive engine of any railroad corporation,

the said corporation shall be responsible in damages for such injury, unless they shall show that they have used all due caution and diligence and employed suitable expedients to prevent such injury."

The defendants contended that their liability was determined by the common law. The court ruled that it was determined by the law of Vermont. The defendants excepted.

The defendants offered evidence for the purpose of showing that the plaintiff was chargeable with contributory negligence. The court excluded it, and the defendants excepted. Verdict for the plaintiff, and motion for a new trial.

*Ladd & Fletcher* (with whom were *Ray, Drew & Jordan*), for the defendants. I. As to venue. The plaintiff had an interest and estate in the land on which his building stood, and to which it was affixed in the way shown. A term for years, as well as a tenancy by statute merchant, staple, elegit, or the like, constitute an estate in land. Co. Lit. 345 a. Could the lessee of a plot of ground in Quebec or in Boston, on which he had erected a permanent and costly building for use in trade, paying a ground rent, maintain an action here for an injury to such building or tenement? We say he could not, any more than if his estate in the land were a fee simple. The thing injured is just as permanent in its nature, just as much a fixture to the land, whether the whole title to both building and land be in the same person or not. While the lease continued in force, the plaintiff's right to keep and maintain his building where it was was complete and perfect, and an injury to it could no more be done in another county or state than if, instead of being technically called a chattel real, his interest in the land were technically called real estate. The substance of the thing is the same whether it be called by the one name or by the other.

II. It was error to import the Vermont statute as a rule to govern in the order and mode of the trial. In a number of the states it is held, without any statute, that, when the plaintiff shows that the fire was set by the defendants' engine, he has made out his case, and it is then upon the defendants to show, if they can, by way of avoidance, that they have used due care in the premises. The following cases are cited as holding such a rule: *Bass* v. *Chicago, B. & Q. R. Co.*, 28 Ill. 9; *St. Louis, A. & T. H. R. Co.* v. *Montgomery*, 39 Ill. 335; *Spaulding* v. *Chicago & N. W. R. Co.*, 30 Wis. 110—S. C., 33 Wis. 582; *Fitch* v. *Pacific R. Co.*, 45 Mo. 322; *Clemens* v. *Han. & St. J. R. Co.*, 53 Mo. 366; *Kenney* v. *Han. & St. J. R. Co.*, 70 Mo. 243, 252; *Burlington & M. R. Co.* v. *Westover*, 4 Neb. 268; *Woodson* v. *Mil. & St. P. R. Co.*, 21 Minn. 60.

The same is said to be the rule of the English courts. *Field* v. *N. Y. C. R. R.*, 32 N. Y. 349. Compare *Piggot* v. *Eastern Counties R. Co.*, 3 C. B. 229, with *Aldridge* v. *Great Western R. Co.*,

3 Man. & G. 515. Wherever this rule as to the burden of proof is held by the courts, it is placed substantially on the ground that the case of fire set by a locomotive steam engine is one of those cases where *res ipsa loquitur*, fault on the part of the defendants being presumed or inferred from the happening of the event. Could it be contended that such a rule, established by the court of a foreign jurisdiction to govern in the production of evidence and the order of the trial, would be brought by a suitor who has chosen the remedy furnished by our form and mode of trial in preference to that of the place where the injury happened, and become a binding rule upon the other party and the court? We think not. And we cannot see that it makes any difference whether such a rule respecting the remedy and the manner of trial be established by the legislature or the court of the other state.

There is no reasonable or sensible ground upon which it can be claimed that the Vermont statute amounts to anything more than a rule respecting the burden of proof to be applied in ordering the mode of procedure at the trial. Thus it has to do wholly and exclusively with the remedy, and does not follow the suitor or his cause into a foreign forum. Sto. Conf. Law, *ss.* 556, 557, *et seq.*

III. But admit that the Vermont statute has application: the court erred vitally in interpreting and applying it. What is to be found in that statute except a legislative decree that when the plaintiff shows the fire to have been set by the defendants' engines he shall recover compensation for the damage caused him, unless the defendants clear themselves by showing that they were in the exercise of due care throughout? Compare the statute with the cases where the care required of a railroad in the construction and use of its engines is discussed, and it will be found that the rule of the statute and the rule of the courts is the same, not only in substance, but generally in form. The courts in every direction, as well as the legislature of Vermont, hold that a failure to use all due caution and diligence, and to employ all suitable expedients to prevent injury, is negligence for which railroads are liable. And no difference is found in this particular whether the court holds that the burden of proving such negligence is on the plaintiff throughout, or that it falls upon the defendants to clear themselves after it is made to appear that they set the fire.

How does this statute differ in effect from the decision of a court holding precisely the same thing in reference to the burden of proof without any statute? We say, Not at all. If casting upon the defendants the burden of showing themselves clear of fault has the effect to relieve the plaintiff from the logical and legal consequences of his own contributory negligence, what difference does it make whether the thing is done by the legislature or the court? We say, None at all. The burden is just as heavy to carry when it comes from the hand of the court as when it comes from the hand of the legislature, and not a scruple heavier. The rule is just as

much a rule, just as binding, just as absolute, in one case as in the other. The reasoning which will relieve the plaintiff from the consequences of his own contributory fault in one case, will relieve him in the other. But no court, so far as we can discover, has yet held such a doctrine. Contributory negligence is just as much a defence in those jurisdictions where the rule as to burden of proof is held according to the Vermont statute, as in those where it is held the other way; and it is certainly hard to understand what logical connection exists between the matter of the burden of proof as to the defendants' negligence, and the matter of the plaintiff's own fault as a causative element in bringing upon himself the injury.

How can it be doubted that this is the true construction of the statute ? " The said corporation shall be responsible in damages for such injury, unless they shall show that they have used all due caution and employed suitable expedients to prevent such injury." What is "all due caution"? Such caution as a prudent man would exercise under the circumstances of the situation. Has not a prudent man a right to expect, and assume, and govern his own conduct by the assumption, that all men will exercise ordinary care for the protection of their persons and property? Certainly he has, unless there is something to notify him to the contrary. The affairs of the world could hardly be carried on a day upon any other basis. A locomotive engineer sees a man, apparently in possession of his senses, walking on the line in front of him. Must he stop the train, and go and see that the man is really in a mental and physical condition to take care of himself? No. The chances are a million to one that he will get out of the way before the engine strikes him. The engineer is legally and morally right in assuming that he will do so.

So with respect to property: If a man voluntarily erects a building or deposits his goods in a situation of known and well understood danger, as upon the land of a railroad in close proximity to its track, it would be absolving him from a plain natural as well as a plain legal obligation to say that his duty in the care and protection of such property is not to be measured by the known ordinary perils of the situation of exposure in which he has placed it. And it would be reversing rules of conduct in the affairs of every-day life, so fundamental and axiomatic as to defy exposition or illustration, to say that a railroad may not lawfully assume that he has taken such reasonable care for the protection of his property as the circumstances of its situation call for. Of course the care required of the railroad is to be determined largely by the same considerations. If the nature and situation of the exposed property are such as make the danger of its injury or destruction very great, due care on the part of the railroad with respect to it will undoubtedly be a high degree of care. But due care in that case is not to be measured by a rule which assumes

the entire want of care on the part of the owner of the property. Due care by the railroad would be such care as a prudent man would take not to injure the property of his neighbor, assuming that his neighbor himself will use due care for the protection and safety of that property.

Take the present case: The plaintiff leases of the defendants a piece of land, erects thereon a building as near the track as it can be built and allow the trains to pass, and in the building deposits his goods for purposes of trade. Now, it is conceded that the duty of the railroad is, in point of fact, affected by this. Due care on their part, after the erection of the building and deposit of the goods, is, beyond question, a higher degree of care, in fact, than was required in managing their trains and engines at the same place before. The nearer their track and the greater the exposure of the property, the greater must be their care in order that it amount to " due " care, and so meet the requirement of the law, not only as laid down in the statute of Vermont, but as declared by the courts everywhere.

But, while such a rule is justly enough applied to the railroad, can the plaintiff be allowed to shut his eyes to the natural, ordinary, and inevitable risks which he has voluntarily incurred by placing his property in a position so exposed? May he with impunity omit every precaution which ordinary prudence would suggest for the protection and preservation of his property against a known peril? May he suffer his roof to become rotten and remain in a state to invite combustion, or his premises to be strewn and littered with some highly inflammable material to the very track of the railroad, and then demand that the railroad shall, at all hazards, so manage their engines and trains and so conduct their business as to do him no harm? What good reason can be given why a person situated as this plaintiff was should not be required to do something by way of taking care of his property, thus voluntarily put by him in a place of known and acknowledged danger?

The point we make is, that the " due caution " called for by the statute is such caution as is reasonable and proper to be taken under all the circumstances of the case; and that one of those circumstances is, that the owner of the property shall also take such care of it as a man of common-sense and common prudence would take of his property in such a situation;—that, in requiring the exercise of due caution, the statute does not call for a degree of caution which shall absolutely insure the safety of property carelessly and negligently exposed to destruction by its owner near the line.

Again: The only fair construction of the statute is, that the railroad shall be holden to pay for such damage as they have caused,— not for damage caused in some other way. Contributory negligence is negligence of the plaintiff which bears such a causative

relation to the injury of which he complains and the damage he has suffered, that, without such negligence, the injury would not have happened. *Tuff* v. *Warman*, 5 C. B. N. S. 583.

Now, how can it be said that a mischief is caused by the fault or negligence of one, when, notwithstanding such fault or negligence, it still would not have happened but for the concurring fault or negligence of another? Here is a negligent act or omission of A and a negligent act or omission of B, which concurring produce a damage to either A or B: if the negligent act or omission of either A or B had not occurred, the mischief would not have occurred: clearly it is not possible to say in such case that it was the negligence of either A or B that caused the mischief. Is it a fair interpretation of this statute to hold that it expresses a legislative intent to compel railroads to pay for damage which they do not cause?

There is a clear distinction between this case and *Rowell* v. *Railroad*, 57 N. H. 132, which is, that the New Hampshire statute does not make the liability in such cases to depend at all upon the question of care or negligence on the part of the railroad. No matter how free from fault, if their fire caused the mischief, they must pay; and no matter how careless, still all that can be required of them is to pay. The court held that this put them substantially in the position of underwriters in a fire insurance policy. With all that can be said in defence of that decision, however, we venture to predict that whenever it becomes necessary to carefully and thoroughly reëxamine the ground upon which it is placed, the case will have to be overruled.

One important consideration seems to have escaped the attention of the court, namely, that it could hardly have been the intention of the legislature to compel any person to pay for an injury which he did not cause; or, in other words, which would not have happened but for the fault of the person injured, contributing immediately to produce it. But it is not necessary to examine the soundness of that decision now, because the Vermont statute in express terms makes the liability of railroads to depend on the exercise by them of due care; and, as we have already argued, no man can owe to another an amount of care with respect to the property of such other which will insure the safety of such property against the negligent, heedless, or careless conduct of its owner. " Due " care does not mean any such degree of care as that in the language of the law, any more than it does in the language of common-sense and good morals.

The substance of the defendants' contention on this point may be summed up in a word: We say that the doctrine of contributory negligence applies. Then we say the care due from each party— from the plaintiff as well as from the defendants—with respect to this property, was fairly to be measured and determined by the character and condition of the property, and its exposure to the

natural and ordinary dangers arising from operating the railroad in the way railroads are usually operated at such points. Either party omitting such care as a reasonable and prudent man would take, in view of all these circumstances, must stand the usual legal consequences of such omission. And if it turns out that such omission by the plaintiff immediately contributed to the burning, so that otherwise it would not have happened, he cannot recover.

*Philip Carpenter* (with whom were *Bingham, Mitchells & Batchellor*), for the plaintiff. I. The Vermont statute is something more than a mere regulation of the order of the trial.

1. It gives a right which did not before exist. It gives a person whose property is injured by fire communicated by a locomotive a right to damages, unless the railroad can show that they have "used all due caution and diligence, and employed suitable expedients to prevent such injury." A right to damages upon showing negligence is one thing, and a right to damages without showing negligence is clearly another and a different thing. Suppose that, in fact, after all the evidence on both sides is in, it is just as probable as otherwise that the defendants were in the exercise of ordinary care at the time of the injury—suppose the scales to be exactly balanced upon that point: then, at common law, the defendants would be entitled to judgment, while, under the Vermont statute, a verdict must be given for the plaintiff. Does not that statute give such a plaintiff a new and substantial right, and one entirely different from his common-law rights? It is not a mere rule prescribing the order of trial: it gives a plaintiff, in many cases, and very likely did in this one, a legal right to a verdict after the trial is completed, which, but for the statute, he would not have.

2. It is not a mere shifting of the burden of proof. Defendants in Vermont are required to show that they have done more to prevent injury by fire than a plaintiff at common law would be required to show that they had not done. The exercise of all due caution and diligence, and the employment of suitable expedients to prevent injury, are something more than the mere exercise of ordinary care. Ordinary care is not so high a degree of caution as is required by the Vermont statute. The phrase ordinary care is not synonymous with the language of the statute. See Webster's and Worcester's dictionaries and Crabbe's Synonyms.

3. But if the statute does merely shift the burden of proof, if it does mean merely that the road shall show that they were in the exercise of ordinary care, instead of requiring the plaintiff to show that they were not, even then it must govern this case, because, as indicated in paragraph 1, *ante*, that is not a mere change of the order of trial. In addition to changing the order, it gives the plaintiff a legal right he did not possess before the statute was passed,—a right to damages,—without making it appear more prob-

able than otherwise that the defendants were negligent; and it also imposes a liability upon the defendants that they would not otherwise be subject to,—a liability to pay damages.—when it is just as probable as otherwise that they were not negligent.

II. The doctrine of contributory negligence has no application whatever here. See the able opinion of Judge *Ladd* in *Rowell* v. *Railroad*, 57 N. H. 135, and cases cited. Whether the plaintiff used due care or not is of no importance whatever. If the defendants complied with the requisitions of the law, they were not liable; otherwise, they were. No matter how careless the plaintiff may be, if the defendants do their duty no harm can happen, or if it does happen, they are not liable. There can be no inquiry as to the plaintiff's action or non-action; the question is, merely and solely, Did the defendants use all due caution and diligence, and employ suitable expedients, to prevent such injury? If they did exercise the caution thus required by law, that fact discharges them from liability; nothing short of it will. What the plaintiff did or did not do is entirely immaterial (unless his negligence amounted to fraud). The inquiry for the jury is, whether the defendants, by using all due caution and diligence and employing suitable expedients, could have prevented the injury. Every person has the right in Vermont to use his property adjoining a railroad precisely as if the road were not there. In other words, whatever risks come from the railroad are assumed by them. This particular risk was a burden, among many others assumed by these defendants, in consideration of the grant of their franchise. They took the right to build a railroad, and operate it by steam, subject to the liabilities imposed by the laws of their grantor. They cannot therefore complain when those laws are enforced.

CLARK, J. The plaintiff's buildings, standing on the land of the railroad with the right of removal, were personal property (*Aldrich* v. *Parsons*, 6 N. H. 555, *Dame* v. *Dame*, 38 N. H. 429); and the nature of the property was not changed by the fact that the plaintiff may have had such an interest in the land as would enable him to maintain an action of trespass *qu. cl.* for an injury to the possession. This action is for the recovery of damages for the destruction of the buildings and their contents; and the property destroyed being personal, the action is transitory, and the plaintiff's right, whether common law or statutory, may be enforced in the courts of this state. *Henry* v. *Sargeant*, 13 N. H. 321; *Cady* v. *Sanford*, 53 Vt. 632, 639, 640. "Wherever, by either the common law or the statute law of a state, a right of action has become fixed and a legal liability incurred, that liability may be enforced and the right of action pursued in any court which has jurisdiction of such matters and can obtain jurisdiction of the parties." *Miller*, J., in *Dennick* v. *Railroad Co.*, 103 U. S.

11, 18.   As the cause of action arose in Vermont, whatever would be a defence to the action, if brought there, must be a defence everywhere.   Cool. Torts 471.

The defendants contended that their liability was fixed by the common law, but the court ruled that it was determined by the law of Vermont, and the defendants excepted; and this presents the principal question in the case.   It involves a construction of the Vermont statute relating to the liability of railroad corporations for injuries by fire communicated from locomotive engines, which is as follows: " Where any injury is done to a building or other property by fire communicated by a locomotive engine of any railroad corporation, the said corporation shall be responsible in damages for such injury, unless they shall show that they have used all due caution and diligence, and employed suitable expedients to prevent such injury."   Gen. St. Vt., *c.* 28, *s.* 78.   The statute also provides that a railroad corporation shall have an insurable interest in such property along their route, and may procure insurance thereon in their own name and behalf.   If the courts of Vermont had given a construction to this statute, it would be followed, upon the principle, generally if not universally recognized, that the judicial department of every government is the appropriate organ for construing the legislative acts of that government. *Elmendorf* v. *Taylor*, 10 Wheat. 157, 159.   But we have been unable, by our own research or by the aid of counsel, to find any case where the courts of Vermont have been called upon or have undertaken to give a legal construction of the statute upon the question whether it was intended to change the common-law liability of railroad corporations in cases of injury by fire from locomotive engines, or whether it was designed to affect the remedy merely, by enacting that proof of the fact that the fire was communicated by a locomotive should be *prima facie* evidence of negligence of the company.   If the statute changes the common-law liability of the defendants, the ruling of the court was right.   If it relates merely to the mode of trial and the remedy, the common-law rule should have governed the trial.

In *Cleavelands* v. *G. T. R. Co.*, 42 Vt. 450, which is the only case in the courts of Vermont under this statute to which our attention has been directed, the question was not raised or considered.   The court say,—" The plaintiffs claimed, and the evidence tended to prove, that the fire by which their property was destroyed originated by fire communicated by an engine of the defendants.   The plaintiffs were not bound to prove anything further in the first instance.   The burden then, under Gen. Sts., *c.* 28, *s.* 78, was cast on the defendants, in order to exonerate themselves from liability for the plaintiff's loss, of showing " that they had used all due caution and diligence, and employed suitable expedients to prevent such injury."   The question whether the plaintiffs, under the statute, were required to prove negligence

of the defendants by a preponderance of evidence upon the whole case, or whether the defendants were required to prove affirmatively by a preponderance of evidence that the fire was not caused by their negligence, was not discussed, and the language of the court is consistent with either view. There being no preponderance of evidence either way upon the question of negligence, in the one case the defendants would be entitled to a verdict, and in the other the plaintiffs would be entitled to the verdict. And this is the point of difference upon this branch of the case. The defendants contend that the reasonable construction of the statute leaves the burden of proof upon the whole case upon the plaintiff, as at common law, to show by a preponderance of evidence that the injury was caused by the defendants' negligence. On the other hand, the plaintiff claims that the effect of the statute is to shift the burden of proof, upon the question of negligence, from the plaintiff to the defendants, and to require the defendants to show by a preponderance of all the evidence in the case that the injury was not caused by the defendants' negligence; and so the statute has changed the common law, and increased the liability of railroad corporations by imposing upon them the burden of showing affirmatively "that they have used all due caution and diligence and employed suitable expedients to prevent such injury."

*Richardson* v. *Grand Trunk Railway Co.* was an action under this statute, brought in the circuit court of the United States for the district of Vermont. The court charged the jury "that the burden of proof was upon the plaintiffs, in the first instance, to show that the fire in question was communicated from some of the defendant's locomotive engines to the bridge; and that if the jury were satisfied of that fact by a fair balance of evidence, then the plaintiffs were entitled to recover, unless the defendant had established, by a fair balance of evidence, that it had used all due caution and diligence, and had employed all suitable expedients to prevent the fire; that the burden of proof was on the defendant as to the latter branch of the case." This was excepted to. On error to the supreme court of the United States, upon this point the court say,—"We see no just ground of complaint of the affirmative instruction given to the jury. It was in accordance with the rule prescribed by the statute; and there seems to have been no controversy in the circuit court respecting the question, whether, if the fire was communicated to the bridge by a locomotive, it caused the injury to the plaintiffs." *Grand Trunk Railway Co.* v. *Richardson*, 91 U. S. 454, 459, 474. So far as this case may be regarded as a precedent upon the construction of the statute, it would seem to be an authority in favor of the plaintiff.

In some jurisdictions the rule is adopted by the courts that the destruction of property by fire from a locomotive raises a presumption of negligence, meaning thereby that proof of the escape of fire from a locomotive is *prima facie* evidence of negligence. Shear.

& Red. Neg., s. 333; *Clemens* v. *Railroad*, 53 Mo. 366; *Burke* v. *Railroad*, 7 Heisk. 451; *A. T. & S. Fé Railroad* v. *Stanford*, 12 Kans. 354; *Spaulding* v. *Railroad*, 30 Wis. 110. This rule is based upon the fact that locomotives properly constructed, in suitable condition and properly managed, do not ordinarily scatter fire; and also upon the fact that the information as to the condition, construction, and management of their engines, as well as the means of rebutting the charge of negligence, are peculiarly in the possession of the company. A similar rule has been recognized in this state in cases of injury to animals rightfully upon a railroad track. *White* v. *Railroad*, 30 N. H. 188; *Smith* v. *Railroad*, 35 N. H. 356. In these cases, however, negligence is the gist of the liability; and the burden of proving negligence by a preponderance of evidence is on the plaintiff.

The defendants contend that the Vermont statute is merely a legislative enactment of the rule adopted by the courts in the foregoing cases, designed to affect the order of proof at the trial, and not intended to impose any additional burden upon the defendants; and that under the statute the defendants are required only to counteract the evidence of negligence arising from proof that the fire was communicated by a locomotive, and that they are not required to prove by a preponderance of evidence that they were not negligent; that the burden still remains as at common law upon the plaintiff to prove negligence, and not upon the defendants to disprove it. The fact that the statute recognizes negligence as the gist of liability favors this view. On the other hand, it is argued that the statute is not a mere rule prescribing the order of trial; that it was the intention of the legislature to enlarge the common-law liability of railroad corporations, on account of the increased hazard to contiguous buildings and property by reason of the use of locomotive engines, and to secure greater care in their operation and management by enacting a more rigorous rule than that imposed by the common law; that the statute was designed in general terms to make such corporations responsible in damages for all injuries caused by fire from locomotives, allowing this liability to be avoided only by showing affirmatively that they were free from fault.

We are inclined to this view. It seems to be the fair and reasonable interpretation of the language of the statute. If it had been the intention of the legislature simply to enact a rule of procedure, not affecting the question of liability, it is reasonable to assume that it would have been expressed in unambiguous language. If the purpose was to impose an absolute liability in all cases unless the company could exonerate themselves by showing affirmatively that they "had used all due caution and diligence, and employed suitable expedients to prevent such injury," it is not readily apparent how that purpose could be more clearly expressed.

This view of the construction of the statute is confirmed by the

reasoning of the court in *Wakefield* v. *Railroad*, 37 Vt. 330, which was an action to recover damages for injuries caused by the neglect of an engineer to ring the bell or sound the whistle at a crossing, as required by the statutes of Vermont. In the opinion of the court, *Barrett*, J., says,—" By *s.* 55, *c.* 28, Gen. St., it is required that on every locomotive engine the bell shall be rung, or the steam whistle blown, at least eighty rods from the crossing. . . . In *s.* 55 the requirement is affirmative and unconditional; but in *s.* 56 it is enacted that if any railroad corporation shall unreasonably neglect or refuse to comply with the requisition of the preceding section, they shall forfeit for every such neglect or refusal a sum not exceeding two thousand dollars. The corporation could not be subjected to that penalty unless such neglect or refusal should be shown to be unreasonable. This clearly implies that in contemplation of the law there may be cases in which such neglect or refusal would be reasonable; and if reasonable, the penalty would not be incurred. In a prosecution for the penalty, the burden would be upon the prosecutor of showing the neglect or refusal to have been unreasonable; and, upon first impression, it might seem that the rule, as to the liability of the corporation, is the same *civiliter* as *criminaliter*. But, on very full consideration, the court are unable to adopt that view. At common law it would be the duty of the corporation to exercise all reasonable care in the running of engines, and in the general use of the railroad, and to adopt all proper precautions against accident; and the faulty neglect of the corporation in these respects would, when affirmatively shown, subject them to liability for injuries caused thereby. We think the provision of the 55th section was designed to operate more stringently in this respect than the common law; and while it was not designed to subject the corporation to civil liability, entirely regardless of the circumstances and occasion of the omission to ring the bell or blow the whistle, in all cases of injury by such omission, still it was designed to require, as the general rule, that the bell should be rung or the whistle blown in all cases; and, in case of injury by reason of an omission to do so, to impose the burden on the corporation of showing that such omission, in the exercise of a sound judgment by the engineer, in view of the condition of things as they existed at the time, was reasonable and prudent. When, therefore, in a case like the present, the plaintiff would show that the alleged injury was caused by such omission, it would not be necessary to his right of recovery that he should take the burden of showing affirmatively that such omission was unreasonable and imprudent; but it would rest on the defendant, as matter of defence, to show that it was reasonable and prudent."

The reasoning of the court in *Wakefield* v. *Railroad* is applicable to the present case. It is a construction by the supreme court of Vermont of secs. 55 and 56 of chap. 28 of the General Statutes of Vermont, relating to railroads. We are considering section 78

of the same chapter. Sections 55 and 56 provide in substance that railroad corporations shall be responsible in damages for injuries caused by omission to ring the bell or blow the whistle, unless they shall show that such omission was reasonable and prudent under the circumstances of the case. Section 78 provides that railroad corporations shall be responsible in damages for injuries caused by fire, unless they shall show that they have used all due caution and diligence, and employed suitable expedients to prevent such injuries. Upon the point in question, the cases are analogous. and we think that the ruling of the court, at the trial, upon this branch of the case, and the charge to the jury upon the burden of proof, were correct. The charge upon that point was, in substance, the same as was given in *Richardson* v. *Grand Trunk Railway Co., supra.*

The court ruled that the doctrine of contributory negligence was not applicable to this case. What constitutes contributory negligence, and how far it is a defence in cases of injury by fire from locomotive engines, has been a subject of discussion in the courts in many jurisdictions, and the decisions are conflicting. Under our New Hampshire statute relating to the liability of railroad corporations for damages by fire, the question of negligence does not arise (G. L., *c.* 162, *ss.* 8, 9, *Hooksett* v. *Concord Railroad,* 38 N. H. 242, *Rowell* v. *Railroad,* 57 N. H. 132); and we have found no case where the question has been considered or a construction given to the Vermont statute by the courts of Vermont. In the absence of any judicial interpretation of the statute by the courts of that state to guide us, we think the ruling was correct. It seems to be sustained by the rule of construction applied by the supreme court of Vermont in analogous cases. A preceding section of the same chapter (*c.* 28, *s.* 47, Gen. St. of Vermont) makes it the duty of a railroad corporation to erect and maintain a legal fence on the sides of their road, and cattle-guards suitable and sufficient to prevent cattle and animals from getting on to the railroad ; and provides that " until such fences and cattle-guards shall be duly made, the corporation and its agents shall be liable for all damages which shall be done by its agents or engines to cattle, horses, or other animals thereon, occasioned by want of such fences or cattle-guards." Under this statute, it is held that the duty of the railroad to erect and maintain fences along their road is absolute, and the question of contributory negligence on the part of the owner of animals injured through the want of such fences does not arise. *Mead* v. *Railroad,* 52 Vt. 278. A similar principle of interpretation excludes the defence of contributory negligence in cases of damage by fire. Such, we think, would be the construction of the statute by the Vermont courts, and it is immaterial what our construction would be if it were a New Hampshire statute.

In favor of this construction it may be argued that it is not only

in harmony with the Vermont decisions in analogous cases, but it is the natural and reasonable interpretation of the language of the statute, " that the corporation shall be responsible in damages for such injury unless they shall show that they have used all due caution and diligence and employed suitable expedients to prevent such injury; " that the statute expressly declares in what cases the corporation shall be relieved from liability, and no other defence is recognized, except showing " that they have used all due caution and diligence, and employed suitable expedients to prevent the injury; " that unless these facts are shown, the liability of the corporation is absolute ; and that, by the elementary rule of construction, *expressio unius est exclusio alterius*, the defence of contributory negligence is excluded in cases under this statute. The Vermont statute, like ours, gives railroad corporations an insurable interest, in their own name and behalf, in property exposed to danger along their route ; and the suggestions of *Cushing*, C. J., in *Rowell* v. *Railroad*, 57 N. H. 132, 139, would seem to be applicable here : " Contributory negligence does not furnish any defence to any action by the insured on the policy of insurance. Negligence, either of the railroad or of the land-owner, would not, according to the authorities, be a defence to an action by the proprietors to recover on their policy the amount of the loss insured. It would be odd enough if the proprietors could recover on their policy, and then turn round and defeat the property-owner on the ground of contributory negligence." The jury were instructed that the defendants were not liable for fault unless such fault occasioned the plaintiff's loss ; and that they had the right to act, on the presumption that owners would take reasonable care of their own property. The instructions were correct.

*Judgment on the verdict.*

Smith and Carpenter, JJ., did not sit : the others concurred.