### STATE *v.* JOHN H. WOODWARD.

*Common.   Construction of deed.   Dedication by town.   Nuisance.
Question for the jury.*

A deed which conveys land to a town in fee, will not be construed as a dedica-
tion of the land to the public use, although it be expressed, that the land is con-
veyed for the use of the town as a meeting house green.

But if, after accepting such a deed, the town suffer the land to remain unenclosed,
and place a survey of it, describing it as part of the common, upon record, and
then permit an uninterrupted use of it by the public for more than fifteen years,
this will amount to a dedication of the land to the public, which is irrevocable.

State *v.* Woodward.

Where, upon the trial upon an indictment for a nuisance, the act complained of is the taking of property dedicated to the use of the public and appropriating it to private use, thereby wholly excluding the public from the enjoyment of it, the respondent is not entitled to have the question, whether the act is a nuisance, submitted to the jury;—such act is in law a nuisance, for the commission of which there can be no justification.*

INDICTMENT for a nuisance, for inclosing a portion of a public common in in the town of Westford. Plea, not guilty, and trial by jury, March Term, 1849,—BENNETT, J., presiding.

On trial the prosecutor gave in evidence a deed from Lewis Curtis, administrator *de bonis non* of Luke Camp and administrator of Elizabeth Camp, to the town of Westford and the First Congregational Society in Westford, dated July 16, 1819, in which, after reciting, that Luke Camp, in his life time, had made a donation to the said society of two acres of land for a site for a meeting house, and that Elizabeth Camp had sold to the town of Westford two and a half acres, adjoining said two acres, " to enlarge the meeting house green," and acknowledging the receipt of the residue of the consideration remaining unpaid, the grantor proceeded to convey to the grantees the said four and a half acres of land, describing it as then " occupied as a meeting house green,"—to the society two acres, by metes and bounds, and to the town two and a half acres, by metes and bounds,—closing the description with these words,—" which two tracts are conveyed for the use of said society and said town as a meeting house green ;—*habendum* to the society and town, in the proportions above described, " to their own proper use, benefit and behoof forever ;" and containing a covenant of warranty " against all lawful claims and demands of any person or persons whatsoever." It was conceded, that the grantor had good title in fee to the land so described, and that the proceedings were regular to convey the same to the town. The prosecutor also gave in evidence a survey, procured by the town to be made May 9, 1825, of the two acres conveyed by the above deed to the society, describing it as the meeting house common, and of the two and a half acres conveyed to the town, describing it as the " town common,"—which survey was recorded May 9, 1925 ;—also the proceedings of a town meeting of the

---

* See *State* v. *Croteau, ante,* page 14.

town of Westford, held October 7, 1843, at which the town voted, that certain persons " be appointed agents, to sell and convey by deed a portion of the common lying in front of lands owned by John W. Hale, John H. Woodward and Manly Dimick ;"—also a warrantee deed from the town of Westford to the respondent, dated June 17, 1844, executed in pursuance of the foregoing vote, and conveying to him a portion from the south side of the two and a half acres conveyed to the town by Lewis Curtis.

It appeared, that the respondent had enclosed the land, so conveyed to him by the town, and had occupied it to the time of trial.

The prosecutor also gave evidence tending to prove, that the town of Westford, as well as the First Congregational Society in Westford, accepted the deed of Curtis, and that that deed was recorded November 21, 1820, and that the land thereby conveyed was used and occupied, at the date of the deed, as a public or meeting house green, and that it was continued to be so used and occupied for a series of years, without any objection, and without there being any attempt to change its boundaries. The prosecutor also gave evidence tending to prove, that there had been a dedication of the land to the public use, independent of the deed ; and also evidence tending to prove, that the inclosure by the respondent was an injury to one Hoxie, who owned premises bordering upon the common.

The respondent gave evidence tending to prove, that Hale, Hoxie and the respondent were the only owners or occupants of land bordering on the south side of the premises conveyed by Curtis' deed ; that Hale had inclosed that part of said premises in front of his house, by virtue of a conveyance from the town; that Hoxie purchased of one Dimick, after the town had sold to Woodward and he had made his inclosure, and that Dimick signed the petition to the town to make the sale to Woodward, upon which the town acted, and was present at the town meeting, October 7, 1843, and voted in favor of the sale. The respondent also gave evidence tending to prove, that the surface of the land adjoining upon the land conveyed to the town and society was such, that the north and south parts of the land so conveyed were required by the necessities of the community for building lots ;—that at the time of the purchase, and of the conveyance by Curtis to the town, it was the purpose of the town, and of its inhabitants, in making the purchase, to hold the land subject to

their absolute control, and to appropriate it to private purposes as fast as it should be required for such purposes, and as should be thought by the town for its best interests;—that the town, both by their corporate acts and by the acts of the selectmen, had assumed an ownership over the property, and assumed control over it for purposes of sale and exchange, although it was not enclosed by the town, except some parcels, which had been sold and leased;—that neither the town, nor the inhabitants, ever made or intended to make any dedication of the premises in point of fact;—that in 1825 the town purchased of one Beach two acres of land, for the purpose of enlarging the green upon the east, and then marked out a part from the green, upon the north and the south sides, and appropriated it by sale to private purposes, both for the purpose of affording building lots, which could not be otherwise obtained in that vicinity, and for the purpose of improving the common, both in its appearance, and in point of convenience for the public and the inhabitants;—that the town, as early as 1825, began to carry out that plan, and that the money was raised in 1825 for that purpose, and some sales were soon after made of lots from the green, in accordance with that plan;—that such change in the green was no inconvenience to the public, but was a public improvement;—and that the inclosure made by the respondent was not any detriment or inconvenience to the public or the inhabitants, but was a public improvement, both in appearance and public utility and convenience;—and the respondent claimed, that the jury were to find, whether, on the whole, the inclosure by him was a nuisance.

After the close of the testimony, the court having intimated, that they should charge the jury, that, if they found, that the deed of Curtis, conveying the premises therein specified to the grantees for their use as a meeting house green, was by them accepted, and the land permitted by them to be appropriated and used by the public, as a meeting house green, or public common, under their conveyance, it became a conclusive dedication of the premises, deeded to the town, to the use and purposes of a public common, and that it was not competent for the town subsequently to appropriate and divert any portion of the premises to other purposes, and that the respondent could not justify his erections and possession of that portion of the public common, by him enclosed, under his deed from

the town, though it should appear, that the alteration made by him was not injurious to the public, but beneficial,—and that it could not alter the case, although the jury should find, that the town conveyed to the respondent by the consent and approbation of Dimick, who at the time owned the premises which subsequently became the property of Hoxie, and to whom the testimony tended to show the alteration of the common by the respondent to be prejudicial,—the respondent, under this intimation and ruling of the court, submitted to a verdict against him, which was taken by consent, subject to exceptions.

*A. Peck* for respondent.

I.   The decision of the court, that the deed from Curtis to the town was, when accepted, a conclusive dedication of the premises to the public use, as a public common, was erroneous.

1.   The deed is not a dedication to the *public ;* it is an absolute grant in fee simple to the town.   The words in the descriptive part of the deed, *"for the use of said society and said town as a meeting house green,"* are not a dedication to the public.   In order to constitute a dedication by force of the deed, (if it can ever be done, where the fee is granted,) the words must amount either to a condition, or a limitation of the use to the public; it is absurd to say, that, when the grantee takes a fee simple absolute, without condition or limitation, the public at the same time take the use by dedication by force of the deed.

2.   The *public* cannot take the use by dedication by force of the deed,—not being named in the deed, either expressly or by implication ; but on the contrary, by the words used, not only the *fee*, but the *use*, is in terms conveyed to the grantees.

3.   The words *" meeting house green "* do not import a public common, which the state can control and keep open for the public. Town commons and meeting house greens are private property, and subject to the control of towns and religious societies ; and although the mode of enjoyment by the owners differs from the ordinary occupancy of private property, and is of a *quasi* public character, yet the ownership and control is no less absolute.   The case is stronger for the defendants than *Beach* v. *Haynes*, 12 Vt. 15.

4.   Towns have the right to purchase and hold lands in fee, not

only as sites for town houses, but as commons, and even as public commons, and have the right to convey, control and change the location of the same at will, as the necessities or conveniences of the town may require, even though the purchase be originally made expressly for a common. This power is necessary to the proper exercise and discharge of the rights and duties of towns in relation to this subject, considering the frequent cases, where the necessity and conveniences of towns require a change of location in their public buildings and places of public resort.

II. A town cannot make a dedication, or, if competent thus to put the property beyond the control of the town, it can be done only by vote of the town.

III. To constitute a public nuisance, there must be not only an actual injury, but it must be of a public character; an injury to a single individual is not sufficient. This point should have been left to the jury. Hawk. P. C. 197. *King* v. *Russell*, 13 E. C. L. 254.

In *Rex* v. *Morris*, 20 E. C. L. 421. VAUGHAN, B., left it to the jury to find, " Whether, or not, the effect of the defendant's rail way was to obstruct, hinder and inconvenience the public." The case of *Rex* v. *Tindall*, 33 E. C. L. 26, shows the question is one of fact, and repudiates the notion of a nuisance *ipso facto*, as matter of law. The case of *Rex* v. *Ward*, 31 E. C. L. 92, was left to the jury, who found, " that they considered it to be a nuisance;" and the court expressly held, that " the question of nuisance, or no nuisance, is for the jury." There is no case, where a public improvement is held indictable as a nuisance.

*J. G. Saxe*, state's attorney, with whom was *L. Underwood*.

The deed contains the intention of the grantor, to appropriate the land in question to public use; and although the town takes the fee, it is subject to this *condition*. They purchase, not only with notice of the grantor's intention, but subject to such condition. Had the grantor declared by parol, that he had opened this land for a public common, and opened it accordingly, and then sold the fee, even without a condition, his grantee would be bound by the dedication, and the grantor's declaration, made before the grant, would be admissible against the grantee ; and the fact being found, the dedication would be conclusive. *State* v. *Catlin*, 3 Vt. 530. *State* v. *Trask*, 6 Vt.

XXIII.        13

The deed from Curtis to the town, in 1819, contains his intention to make this land a public common; and the town accepted the deed, and, by the acceptance, acquiesced in and adopted this intention, and suffered the land to remain open for common use until 1844. These facts, appearing from the deed and the acts of the town, are proved, and of themselves constitute an irrevocable dedication. *State* v. *Wilkinson*, 2 Vt. 480.

When there are no positive acts, constituting a dedication, land may become a public common by *use.* If the time be short, it may be left to the jury to infer a dedication from circumstances. But when the use by the public continues without interruption, as in this case, for more than fifteen years, the public acquire a right therein, which cannot be disturbed. Mere intention of the owner of the soil to put it to other uses makes no difference. *State* v. *Wilkinson*, 2 Vt. 486. *Abbott* v. *Mills*, 3 Vt. 527.

The survey of the land in question, in 1825, and leaving it open, was a direct act of the town, indicating an acquiescence in the dedication, and amounts to a dedication by the town, if none was before made. 11 M. & W. 827.

The respondent cannot justify, under his deed from the town, his enclosure and occupancy of a part of the public common, on the ground that the alteration so made was not injurious but beneficial to the public. The erection of a building on a public common, or any act infringing on its use as a public common, is *ipso facto* a nuisance. *King* v. *Ward*, 31 E. C. L. 92. *Rex* v. *Warde et al.*, Cro. Car. 266. *State* v. *Caldwell*, 1 Dal. 150.

The opinion of the court was delivered by

Kellogg, J. Two questions only are raised by the bill of exceptions.

The first question involves the enquiry, whether the place, where the alleged nuisance was erected, was a public common. The land was purchased by the town of Westford as early as 1819, and it has been argued on behalf of the prosecution, that, by the deed of conveyance, the land was dedicated to the use of the public. But we think this proposition cannot be sustained. The deed from Curtis to the town will hardly bear such a construction. It is true, that by the deed it appears, that the parties, at the time of its execution,

contemplated that the land would be appropriated as a public common. But we do not think the language of the deed is such, as to warrant the conclusion, that the grant was made upon *condition* that it should be devoted to public use, so as to work a forfeiture of the grant upon failure of the condition. That the fee passed by the conveyance would seem to be settled by the case of *Beach* v. *Haynes*, 12 Vt. 15, which was a grant similar in character to the present.

It is, however, urged, that the land in question, after the purchase by the town became and was dedicated to the public, by the permission and acquiesence of the town in the long and uninterrupted use of it by the public. The facts, upon which this claim is founded, are, as appears by the case, that, ever after the purchase of the land by the town, the public were suffered to use it as a public common, —that in 1825 the town made a survey of the common, embracing the land in question, and placed the same upon the town records. This was an unequivocal act of the town, manifesting an intention to set apart the land as a public common. This was followed by an uninterrupted use of it by the public from that time until 1844, when the act was done, which is charged in the indictment. This amounts to a dedication of the land to the use of the public, which was irrevocable, and we think fully justified the charge of the court upon this part of the case.

2. It is urged, that the question, whether the act charged upon the respondent was a nuisance, should have been submitted to the jury and in support of it several cases are cited, which are claimed as sustaining the proposition. Whether, in cases of this kind, the question should be put to the jury must depend upon the character of the nuisance charged in the indictment. If the act complained of does not divest the property, or any part of it, from the use of the public, or in any manner impair the public use and enjoyment of it, but the act was done for the purpose of making the use more beneficial to the public, there would seem to be a manifest propriety in submitting the same to the jury. And the cases which we have examined, where the question has been submitted to the jury, seem to have been of this character. But where the act complained of is the taking of property dedicated to the use of the public, and appropriating it to private use, thereby wholly excluding the public from the enjoyment of it, we are not aware of any rule of law, that re-

quires such an act to be submitted to the jury, to say whether it is a nuisance. Such is the character of the act, with which the respondent is charged; and in the judgment of the court, it is *ipso facto*, in law, a nuisance, for the commission of which there can be no justification.

This disposes of the questions presented; and as we find no error in the proceedings of the court below, the respondent will take nothing by his exceptions.