GEORGE A. BOYDEN, Administrator, *v.* FITCHBURG RAILROAD Co.

May Term, 1899.

Present : ROWELL, TYLER, MUNSON, START, THOMPSON and WATSON, JJ.

Opinion filed December 21, 1899.

*Imputed negligence—Agency.*—The plaintiff's intestate having been killed while riding with companions in the joint prosecution of a common purpose, if the negligence of his companions, to one of whom the driving had been intrusted, contributed to the accident, such negligence was imputable to the plaintiff's intestate, and the plaintiff could not recover in consequence thereof.

*Burden of proof—Presumption—*The burden was on the plaintiff to show that the decedent and his companions were free from contributory negligence. There is no presumption that they were in the exercise of due care and prudence.

*Evidence how viewed on motion for a verdict—*In determining whether the court should have directed a verdict for the defendant, on the ground that the absence of contributory negligence was not shown, the evidence must be viewed in the aspect most favorable to the plaintiff, and it cannot be said, as a matter of law, that in this case there was no evidence tending to show that the decedent and his companions were in the exercise of the care and prudence of a prudent man under like circumstances.

*Lack of due warning by Railroad Co. bears upon the duty of the traveller.*—The jury found the defendant railroad company guilty of negligence in not seasonably blowing the whistle and ringing the bell, and the absence of such due warning is a circumstance to be taken into consideration in determining whether the decedent and his companions exercised due care and prudence, for negligence cannot be attributed to one who is deceived under circumstances calculated to deceive a prudent man.

*Evidence of compliance with the duty to " look and listen "*—That the decedent and his companions, who were all killed, did " look and listen " when they stopped and before starting to cross the defendants' tracks, may be reasonably inferred from the circumstances in evidence and the disposition of persons to take care of themselves and avoid danger.

*Request to charge unsound in part*—One part of a request to charge embodied the proposition that it was the duty of the driver of the team in which the decedent was not to start to cross the track until it was exposed to

view as far as it could be seen, which according to one witness was one hundred and six rods, and as this was unsound, as a proposition of law, the court properly refused to comply with the request as a whole.

*Request immaterial under finding of the jury—Request based on isolated fact.*— One part of a request was based upon the assumption that a whistle was blown and a bell rung when the jury found that they were not, and hence a refusal to comply with this part of the request was harmless to the railroad company. The other part of the same request would have had the jury measure the duty of the decedent's party by their reliance upon their sense of hearing alone, when there were other material facts and circumstances to be considered in connection therewith, and this part of the request was, therefore, unsound.

*Sunday travel lawful*—Travelling on Sunday has not been unlawful in this state since R. L. 4315 was repealed by No. 133, Acts of 1894.

*Remarks of counsel governed by the evidence*—In objecting to an improper question the plaintiff's counsel began a remark which, so far as it went, may and may not have been in accordance with the evidence in the case. The record does not disclose how this was, and error does not appear.

ACTION ON THE CASE to recover damages resulting from the death of the plaintiff's intestate, Edward Roque. Plea, general issue. Windham County, March Term, 1898, *Taft*, J., presiding. Trial by jury. Verdict and judgment for the plaintiff. The defendant excepted.

It appeared that a double-tracked railroad owned and operated by the defendant is, near the village of Pownal, twice crossed by the same highway at points about a thousand feet apart, and that the easterly crossing is near the defendant's bridge over the Hoosick river; that on Sunday, July 21, 1895, the decedent and three companions were riding together over this highway in a double team driven by one of the party other than the decedent; that they first approached the westerly of the two crossings, and that as they did so a freight train eastward bound on the southerly track whistled for that crossing and that they drove over the same just ahead of the train, and then drove along the highway towards the other or easterly crossing, which they reached while the freight train was passing over it or just before it reached it.

The testimony of the plaintiff tended to show that the decedent's party stopped their team about thirty feet from said easterly crossing and waited for the freight train to pass by, and that thereafter the driver started the team slowly to pass over the crossing, and had driven partially over when an express train, westward bound on the further or northerly track, came into view ; that the horses were then just passing over the second or northerly track, and that thereupon the driver stood up and pulled back on the reins, but that the team was struck by the train and the decedent and his three companions killed.

The defendants requests from the ninth to the fifteenth inclusive presented in different aspects the claim that the plaintiff could not recover because his decedent at the time he was killed was travelling on Sunday, and so was wrongfully on the highway.

The case in other respects material to the decision is stated in the opinion.

*Waterman & Martin* for the plaintiff.

*Batchelder & Bates* for the defendant.

WATSON J. At the close of the evidence, the defendant moved for a verdict, for the reason that the evidence showed the driver of the carriage and the deceased guilty of contributory negligence; that the plaintiff had not shown the deceased free from contributory negligence; and that the case did not show negligence on the part of the defendant, its officers or servants in the management of the train. The motion was overruled, and the case submitted to the jury, to which the defendant excepted. The defendant makes no claim of error under the last clause of the motion.

The record shows the plaintiff's decedent and his companions engaged in the joint prosecution of a common purpose, and therein, each was the agent of the others, and each was responsible for the consequences resulting from the acts of the others, or any of them ; and if the driver was not in the exercise of that care and prudence required by law, and thereby contributed to

the accident, his negligence was imputable to the decedent. *Carlisle v. Sheldon*, 38 Vt. 440; *Donnelly v. Brooklyn City R. R. Co.* 109 N. Y. 16. And the burden was upon the plaintiff to show, not only that his decedent, but also that his decedent's companions, for whom he was then responsible in this regard, were not guilty of any negligence which contributed to the happening of the accident. That they were in the exercise of due care and prudence, cannot be presumed, and unless the evidence tended so to show, the plaintiff failed in one essential element of his case, and it was the duty of the Court to order a verdict for the defendant. *Hyde v. Jamaica*, 27 Vt. 443; *Bovee v. Danville*, 53 Vt. 183; *Worthington v. Central Vt. R. R. Co.* 64 Vt. 107.

The decedent and his companions had that day passed over the westerly crossing twice, and the easterly crossing once, and knew the railroad to be of double track, and, seeing the freight train going east, they knew the southerly track was used for trains going in that direction. They stopped their team within about thirty feet of the crossing and waited for the freight train to pass. Some of the evidence tended to show that the freight train had not then reached the crossing, and some, that it was passing over it. This train was forty rods long, and some of the evidence tended to show that the caboose had just gone over the crossing, and some, that it was in the bridge one hundred and ten feet easterly of the crossing, when they started along to cross the track. Easterly of the bridge the railroad track curved southerly, was upon a fill of about thirteen feet above the natural surface, passed through an open meadow, and the northerly track was hid from view by the freight train as it passed along on the southerly track, for a distance of more than the length of the train. As the freight train passed on easterly from the bridge, its whistle was continually blowing, by reason of which, with the noise of the train, the noise of the express train, west-bound on the northerly track, was not noticed by the persons sitting in a wagon on the northerly side of, and near to, the crossing, and the

fair inference is, that, for the same reason, it was not noticed by the decedent nor his companions. As to how far easterly the railroad track could be seen by a person in a wagon in the vicinity of where they stopped in the highway, the evidence was conflicting, some of it tending to show it could be seen for a distance of ninety rods beyond the bridge, and some a less distance. From the crossing to the easterly end of the bridge, was two hundred and seventy feet. The express train was running at the speed of forty miles an hour; and whether its whistle was blown, or its bell rung, before it reached the bridge near the crossing, the evidence was conflicting, the plaintiff's tending to show they were not, and the defendant's tending to show the whistle was blown back eighty rods from the crossing. Was it the duty of the decedent and his companions to wait until the noise of the freight train and of its whistle had subsided, and the temporary obstruction to their view of the track easterly had been removed, that they might more effectually look and listen for west-bound trains on the northerly track, before driving on to the crossing? And was a failure so to do, negligence as a matter of law? In determining this question, the evidence must be considered in its most favorable aspect for the plaintiff.

The jury found the defendant guilty of negligence in running the express train at an unreasonable speed, and in not blowing the whistle nor ringing the bell, as required by law when nearing a highway crossing. The object of such a requirement is to warn travellers upon the highway of approaching danger, that they may act accordingly, and refrain from going upon the crossing until the danger has passed; and it is for the protection, not only of people travelling upon highways, but also of passing trains and the many people travelling therein. Although such negligence on the part of a railroad company, affords no excuse to the traveller upon the highway for his not exercising due care and prudence to avoid injury, yet the absence of such warning is a circumstance to be taken into consideration in determining whether he did exercise the degree of care and prudence required

or not ; for negligence cannot be imputed to a person who is deceived under circumstances calculated to deceive a prudent man.   *Chicago, etc. R. R. Co.* v. *Hedges,* 3 West. Rep. (Ind.), 892 ; *The Cleveland, etc. R. R. Co.* v. *Crawford,* 24 Ohio St. 631 ; 15 Am. Rep. 633 ; *Tyler* v. *New York, etc. R. R. Co.,* 137 Mass., 238.

One witness gave positive testimony that the freight train had not reached the crossing when the decedent and his companions stopped to let it pass.   If this be true, and if it be also true, that from where they stopped, the railroad track could be seen for ninety rods easterly of the bridge, then, when they stopped, the railroad track was clear for a distance of one hundred and six rods easterly from the crossing, and remained clear in front of the freight train, and within view, until they started along to cross the track.   It was up grade to the crossing and the team went slowly.

It may be reasonably inferred from the circumstances, taking into consideration the disposition of persons to take care of themselves and avoid injury, that, while waiting for the freight train to pass, and until they started along, the decedent and his companions looked and listened to guard against any west-bound train which might be approaching on the northerly track,— *Lazelle* v. *Newfane,* 69 Vt. 306 ; *Baltimore, etc. R. R. Co.* v. *Griffith,* 159 U. S. 603,—and not seeing nor hearing any, thought it safe to cross the track.

A jury might find from the evidence and the legitimate and reasonable inferences therefrom, that when the team started along, the express train had not come in view, with the track unobscured, and when approaching, the noise made thereby so mingled with, or was drowned by, the noise of the freight train, that, in the absence of the usual warning by whistle or bell, the decedent and his companions were deceived into thinking there was no train approaching.   The express train was running at the speed of fifty-eight and two-thirds feet a second, and had the

track been unobscured, it was at the place of the accident within twenty-nine seconds after it could first have been seen.

But if the decedent and his companions waited until the rear end of the freight train was more than one hundred and ten feet from the crossing, how long should they have waited, and how far should they have allowed that train to go, before the requisite care and prudence would permit them to start along?

In determining the question of contributory negligence, there were material facts in dispute from which inferences were to be drawn; and in determining the question of whether the motion for a verdict was improperly overruled, we are not to consider what inferences the court would draw from such facts, but what inferences may a jury legitimately and reasonably draw therefrom. It is clearly a case where intelligent and fairminded men may reasonably differ, and it cannot be said, as a matter of law, that there was no evidence tending to show the decedent and his companions in the exercise of the care and prudence of a prudent man under similar circumstances, and therefore, the motion for a verdict was properly overruled. *Latremouille* v. *Bennington, etc. Ry. Co.*, 63 Vt. 336; *Worthington* v. *Central Vt. R. R. Co.*, *supra*; *Lazelle* v. *Newfane*, *supra*.

The defendant insists that the court erred in refusing the following requests to charge: 7th request. "If at the time the team approached the railroad crossing, the freight train hid from view the west-bound track, so that, by reason thereof, the driver and the others in the carriage were unable to see the west-bound track or a train of cars approaching the crossing upon it, as the evidence of both parties tended to show, it was the duty of the driver to stop his team before driving upon the crossing, and wait until the freight train had passed along and away from the crossing far enough to expose to view the west-bound track as far as they were able to see the said track easterly from where they were in the highway, or so far, at least, as to make it reasonably safe for them to drive over the crossing; and that if the driver neglected to do this, the plaintiff cannot recover."

That the decedent and his companions stopped their team some thirty feet back from the crossing, there was no dispute. This request is in the alternative, the fore part of which asks the court, in effect, to instruct the jury that if the freight train hid from view the west-bound track so the driver and the others in the carriage were unable to see it or a train of cars approaching the crossing thereon, it was their duty not to start along until the freight train had passed and was away far enough from the crossing to expose to view the west-bound track as far as they were able to see it easterly from where they were in the highway, which, as some of the evidence tended to show, was one hundred and six rods.     Independent of the evidence tending to show other facts and circumstances bearing upon the question of contributory negligence, it could not be said, as a matter of law, that unless they did wait that length of time, the plaintiff could not recover.     This part of the request being unsound, it is unnecessary to consider the other alternative therein for the court properly refused the whole.     *Berry* v. *Griffin,* 10 Md. 27 ; 69 Am. Dec. 123.

The 8th request, —" If, as the train approached near to the crossing, the noise of the freight train was so great as to prevent the driver and the others in the carriage from hearing either the whistle or bell of the engine of a train approaching on the west-bound track, it was negligence on the part of the driver of the team to drive upon the crossing until the freight train had moved far enough easterly, from the crossing, so that its noise would not interfere with his hearing the bell or whistle of the engine, or a train of cars approaching the crossing on the west-bound track."     This request was also in the alternative, and the jury having found by their verdict that the express train whistle was not blown nor the bell rung, until the train was at the bridge near the crossing, the non-compliance with the fore part thereof was harmless to the defendant.     By the other alternative the court is asked to instruct the jury that it was negligence on the part of the driver of the team to drive upon the crossing until the freight

train had moved far enough easterly, so that its noise would not interfere with his hearing a train of cars approaching the crossing of the west-bound track.   This would be giving the sense of hearing undue importance.   The opportunity for seeing that track easterly, and an approaching train thereon, and the fact that no warning was given of such approaching train by whistle blown or bell rung, were material facts and circumstances to be considered by the jury in connection with the fact that the hearing of such approaching train was obstructed by the noise of the freight train.   It was the duty of the jury in determining the question of contributory negligence, to consider all the facts and circumstances bearing thereon, and not select any particular facts, as controlling the question, to the exclusion of other evidence. *Thornton's Executors* v. *Thornton's Heirs*, 39 Vt. 122; *Gordon* v. *Tabor*, 5 Vt. 103; *Grand Trunk Ry. Co.* v. *Ives*, 144 U. S. 408.   A compliance with this request was properly refused.

The court properly refused to comply with defendant's requests from the ninth to the fifteenth inclusive.   The law prohibiting travelling on the Sabbath, contained in section 4315 R. L., was repealed by No. 133, Laws of 1894, since which time, there has been no law in this state making such travelling unlawful.   V. S. 5140.

The defendant claimed and its evidence tended to show, that the decedent and his companions were intoxicated at the time of the accident.   In rebuttal, the plaintiff improved, as a witness, Benjamin O. Barber, who testified that he examined the bodies after the accident and detected no evidence of intoxicating liquor about them.   In cross-examination, defendant's attorney asked the witness the question: " You heard that day, didn't you, that they were intoxicated ?"   To which the plaintiff's attorney objected, saying: " If the railroad company began circulating reports of their intoxication right off that day"—the defendant's attorney here interrupted and asked for an exception, and plaintiff's attorney did not conclude the remark.   The question was

held inadmissible, and the remark improper, and, if it was a matter of exception, one was allowed. There was testimony in the case tending to show that the railroad company circulated reports, but when, and what the reports were, the exceptions do not show.

The question called for hearsay, and was properly excluded. The remark of plaintiff's attorney, until interrupted, may or may not have been in accordance with the evidence tending to show reports circulated by the defendant. If it was, no harm could have resulted to the defendant therefrom; and, as the record does not show whether it was or not, error does not appear. No other exceptions were relied upon in argument.

*Judgment affirmed.*

*Munson J.*, dissents.