GRACE LEFEBVRE'S ADMR. *v.* CENTRAL VERMONT RAILWAY
COMPANY.

May Term, 1923.

Present: WATSON, C. J., POWERS, TAYLOR, SLACK, and BUTLER, JJ.

Opinion filed January 15, 1924.

*Railroads—Failure to Sound Statutory Warning—Automobile
Driver's Negligence Not Imputable to Guest—Burden of Es-
tablishing Freedom From Contributory Negligence—Failure
to Sound Statutory Warning Considered on Question of
Contributory Negligence—Guest in Automobile Not Re-
quired to Direct Its Operation—Duty of One Approaching
Railroad Crossing—Exceptions to Rule—Duty of Guest in
Automobile—Jury Question—Highways—Rights of Public
and Abutting Owners—Determination of What Are Nui-
sances in Highway—Status of Cinder Platform Accessory
to Railroad Station and Extending Into Highway—Duty of
Railroads As to Crossing Warnings—Harmless Error—
Effect of Motion for Directed Verdict on Other Exceptions—
Loss of Benefit of Exception Saved in One Way Does Not
Affect Same Benefit Under Exception Saved in Another
Way—Witnesses—Competency—Discretion of Court—Doc-
trine of Partial Reversal.*

1. The failure of trainmen to give the statutory signal when ap-
   proaching a grade crossing  is *prima facie* evidence of negli-
   gence.

2. The negligence of the driver of an automobile cannot be imputed
   to his guest.

3. In an action against a railroad company to recover for the death
   of one killed in a collision at a railroad grade crossing, while
   riding in an automobile as a guest, the plaintiff has the burden
   of showing that the decedent was in the exercise of due care
   at the time of the accident.

4. While the failure of trainmen to give the warning required by
   statute, when approaching a crossing, does not excuse the ex-
   ercise of due care by one approaching the crossing while rid-
   ing as a guest in an automobile, such failure is a circum-

stance for consideration in determining whether such person exercised the requisite care or not.

5. Negligence cannot be imputed to one who is deceived by circumstances calculated to mislead a prudent man.

6. A guest, seated between two other persons, on the back seat of a slowly-moving automobile, with its top up, and driven by a competent person, when approaching a railroad grade crossing is not required to advise or direct the operation of the car.

7. The rule that a traveler approaching a railroad grade crossing must look and listen for trains, or be chargeable with negligence if he is injured by one, is not an independent rule of law, but merely an application of the prudent man rule.

8. Such rule is subject to exceptions, and does not apply to persons so situated as to make it wholly unreasonable to hold them to it, nor to those whose situation is such that looking and listening would be a vain and fruitless precaution.

9. The law does not require an impossibility or a useless precaution.

10. If a guest, riding on the rear seat of an automobile of another, and approaching a railroad grade crossing, by such use of her eyes and ears as her situation admitted of, and such as a prudent person would have made, would not have discovered the peril in time to have warned the driver so he could have avoided the collision; or if her situation was such as to excuse a prudent person from the duty of active care; she was not guilty of negligence that would bar an action for her wrongful death.

11. Negligence, in order to be contributory in a legal sense, must be a proximate cause of the accident.

12. Whether a person riding on the rear seat of an automobile acted as a prudent person would have acted under the circumstances *held* for the jury.

13. The right of the public to the unobstructed use of the entire width of the highway is qualified by certain subordinate rights therein of abutting owners of which they may avail themselves to a reasonable extent.

14. Whether an object, structure, or encroachment in the highway is a nuisance depends upon the circumstances of each particular case, and, ordinarily presents a question for the jury, although certain things in the highway may be nuisances *per se.*

15. Whether a raised cinder platform, an accessory of a railroad station and extending therefrom to and into a highway, but not excluding the whole public from that part of the highway and being to some extent a benefit to at least a part of the public, constituted a nuisance was for the jury, and it was error to instruct them that under G. L. 4639 and 4641 it was a nuisance *per se.*

16. Under the statute (G. L. 5173) a railroad company has the choice of whether it will use the whistle or the bell to give the crossing warnings, and need not, so far as the statute is concerned, use both, but whistle or bell must be sounded from the 80-rod point until the crossing is passed.

17. Error, if any, in submitting to the jury the questions of whether or not the whistle was blown or the bell rung as a train approached a crossing, when there was no evidence that the whistle was not blown at the whistling post, was harmless, where no claim was made that the whistle was sounded continuously from such 80-rod point until the crossing was passed, and there was positive evidence that the bell was not rung continuously while the train was passing over that space.

18. Neither the rule, that under an exception to the overruling of a motion for a directed verdict only such grounds as are specified below are for consideration in the Supreme Court, nor any other rule, precludes one from saving an available exception to the submission of any issue to the jury on any specified ground whether covered by the motion of not.

19. A litigant is not precluded from saving a question for review in any proper way, whether he might have saved it otherwise or not, and when he loses by some mischance the benefit of an exception saved in one way, he may have the same benefit under an exception saved in another way.

20. Whether a witness's situation was such that any opinion he might give as to the speed of a train would be of any probative value rests in the sound judicial discretion of the trial court.

21. The application of the doctrine of partial reversal, where the error pertains to the question of liability, depends upon the case made by the record, and each case must be considered on its merits, but where the subject-matter thereof was of such a character as might have had a prejudicial effect on the question of damages, a full retrial will be granted.

ACTION OF TORT for negligence. Plea, the general issue. Trial by jury at the September Term, 1922, Washington County, *Fish,* J., presiding. Verdict and judgment for the plaintiff. The defendant excepted. The opinion states the case. *Reversed and remanded.*

*J. W. Redmond* and *W. R. McFeeters* for the defendant.

It is the duty of the driver of an automobile nearing a railroad grade crossing to look and listen for approaching trains, and to continue to look and listen till the last moment that looking and listening will avail for his protection. *Manley* v. *Delaware & Hudson Canal Co.,* 69 Vt. 101; *Carter* v. *Central Vermont Ry. Co.,* 72 Vt. 190; *Labelle* v. *Central Vermont Ry. Co.,* 87 Vt. 90; *Harrington* v. *Rutland R. R. Co.,* 89 Vt. 112.

When the engineer or fireman on a train nearing a grade crossing sees a traveler on the highway approaching the crossing, the engineer or fireman has a right to assume, and to act on the assumption until the contrary appears, that the traveler will not drive into danger. *Guilmont's Admr.* v. *Central Vermont Railway Co.,* 78 Vt. 185, 188; *La Mountain's Admx.* v. *Rutland R. R. Co.,* 93 Vt. 21, 25.

A cinder walk, leading from a railway station to a highway, and entering the highway on a slope and blending directly therein, for the convenience of the public in reaching and retiring from the station, is not an obstruction, encroachment, nor a nuisance. *Wolff* v. *District of Columbia,* 196 U. S. 152; *Robert* v. *Powell,* 168 N. Y. 411; *City of Richmond* v. *Lambert,* 111 Va. 174, 28 L. R. A. (N. S.) 380; *McCloskey* v. *Buckley,* 223 N. Y. 187; *City of Allegheny* v. *Zummerman,* 95 Pa. 287, 40 A. R. 649; *City of Wellington* v. *Gregson,* 31 Kan. 99, 47 A. R. 482; *Dougherty* v. *Village of Horsesheds,* 159 N. Y. 154; *Lauth* v. *Thompson* (Del.), 39 Atl. 1100; *Weinstein* v. *City of Terre Haute,* 147 Ind. 556, 46 N. E. 1004.

*Theriault & Hunt* for the plaintiff.

The question of whether trainmen have exercised a proper degree of care in keeping lookout for persons at a railroad crossing is generally one of fact for the jury. *Johnson's Admr.* v.

*Rutland R. R. Co.,* 93 Vt. 132; *Miller* v. *Central Vermont Ry. Co.,* 95 Vt. 69.

That part of a cinder platform running from a railway station into a highway which was in the highway, and rendering it less commodious for use by the public was a nuisance *per se.* *State* v. *Wilkinson,* 2 Vt. 480; *State* v. *Woodward,* 23 Vt. 92; *State* v. *Atkinson,* 24 Vt. 448; *Anderson* v. *Young,* 66 Hun. 240; *People* v. *N. C. Ry. Co.,* 164 N. Y. 289, 302.

Such cinder platform, being a permanent structure within the highway, and there being no room for opposing inferences as to its being an obstruction and a *purpresture,* it was, as a matter of law, a public nuisance, and questions such as whether sufficient room was left for the traveling public, or whether the structure served a reasonable and necessary use are wholly immaterial. *City of Montpelier* v. *McMahon,* 85 Vt. 275; *Smith* v. *McDowell* (Ill.), 22 L. R. A. 393; *Davis* v. *New York,* 14 N. Y. 506; *Morse* v. *Jackson,* 2 Abb. N. C. (N. Y.), 211; *Drake* v. *Hudson River R. R. Co.,* 7 Barb. 508, 548; *Eldert* v. *Long Island Elec. Ry. Co.,* 28 App. Div. 451; Joyce on Nuisances, § 61.

POWERS, J.   Late in the afternoon of Saturday, June 17, 1922, an automobile owned and driven by George Bardis, of Northfield, was in collision with the defendant's train at the grade crossing at Riverton station, and the plaintiff's intestate, who was riding in the automobile as Bardis' guest, received injuries that resulted in her death.   This action for damages followed.   Riverton is the first station south of Montpelier Junction, and is about six miles therefrom; there is a heavy grade going south on the defendant's road between these points.   The train involved in the collision was the regular south-bound milk train, running on schedule, and consisted of sixteen loaded milk cars and a coach, drawn by an ordinary freight engine, No. 414. This train, which was not scheduled to stop at Riverton, left Montpelier Junction at 4:42 P. M., under an order to meet a north-bound passenger train at Roxbury, where it should arrive at 5:40 P. M.   At the time of the collision it was running very fast.   The main line at Riverton runs substantially north and south, and the highway crosses it at a grade at substantially a right angle.   The station building is located east of the track and south of the highway.   From the north end of the platform of

this station a raised cinder structure extends northerly along the track and ends in a ramp about nine feet long, which runs down to and blends into the traveled track of the highway. A similar cinder structure extends southerly from the station platform. The one at the north end of the platfrom is made by placing two rows of timbers end to end along parallel to the track at a proper distance from each other, and filling with cinders the space between to the level of the platform. It is about eight feet wide. On the track side it is one foot above the ties and on the east side is two and one-half feet above the ground. Including the ramp it extends into the highway about twenty-five feet. Its obvious purpose is not only to furnish an approach to the station, but also to afford an extension of the station platform for the convenience of persons entering or leaving the defendant's cars and other railroad purposes.

East of its main line, the defendant maintains a spur siding, which branches off at a point about thirty rods north of the station and runs southerly, at varying distances from the main line, to and a little beyond the station, crossing the highway at a point about thirty feet from the main line, and passing east of the station.

The highway is four rods wide. By means of a covered bridge it crosses Dog River about thirty rods east of the main line. As a north-bound traveler comes out of this bridge, he finds at his right on the river-bank, a power house, just west of which is Davis Bros.' long granite shed extending westerly to a point some thirty feet from the siding. At the west end of this shed and on a north and south line therewith an office building extends southerly into the highway. These buildings entirely cut off this traveler's view of the main line to the north until he reaches a point opposite the southwest corner of this office building, about sixty-five feet from the main track. Nor does he then get an unobstructed view of the track to the north, which is practically straight for a long distance. At the west end of the Davis shed there is a trestle, made of heavy timbers, extending westerly to and over the siding and nearly to the main line. This trestle carries the crane that serves the shed. Then, north of the Davis shed and about fifty feet from it, stands the granite shed of Provost & Son, which extends further west than the Davis shed into the defendant's right of way and ends at the siding.

This shed also has a trestle to carry its crane, the same being built from its west end out over the siding like the one above referred to. These trestles, with their heavy uprights and braces, materially obscure the view of the main line track from the highway to the north. A large telephone pole west of the siding nearly opposite the Provost shed adds more or less to this obscurity. The plan and photographs show that it would be difficult to so arrange the structures above referred to as to make it more difficult for a north-bound traveler to discover a train approaching from the north. Not only this, but at the time of this fatality, a box car was standing on the siding at the Provost shed, a flat car loaded with granite stood on the siding at the Davis shed; and south of that car, but north of the highway, stood a gondola coal car forty feet long and eight or nine feet high.

It is thus seen, without the aid of testimony, that a situation very hazardous at best was made much more so by the presence and arrangement of these cars. It would be a fair inference from the evidence that the view to the north was so completely cut off that one traveling north on the highway could not see a train coming south until he had cleared the coal car by several feet, and at a time when the train had nearly or quite reached the Provost shed. As already stated the train in question was running very fast. In the quaint phrase of the craft, the engineer testified that he was "just patting her on the back," meaning that he was trying to get the most possible out of his machine. The statutory signal by bell or whistle was not given.

The automobile in question contained seven persons: On the front seat sat Bardis, Miss Wilfore, and Mrs. Blodgett. On the rear seat were Mrs. Bardis, Mrs. LeFebvre (the decedent), holding her little boy in her lap, and her daughter, Glenna. These persons are here named in order from left to right as they sat in the car. Bardis drove through the bridge and along toward the crossing in low gear at a speed of about nine miles an hour. Just after he passed over the siding, he discovered the approaching train. He turned his car sharply to the left to avoid a collision. He ran the car up the ramp of the cinder platform, but the right rear wheel dropped off the timber and the collision followed almost instantly.

It is not to be taken, of course, that the foregoing facts were undisputed. There was a conflict of evidence as to many if not all of the most vital ones; but giving the plaintiff the benefit of a favorable construction, the facts above recorded are within the tendency of the evidence.

At the close of the evidence, the defendant moved for a directed verdict. This motion was overruled, and the defendant excepted.

[1]  We need take but little time with the claim that the evidence does not tend to show that the defendant was negligent. We are not concerned with the preponderance of the evidence; it is enough for our present purpose that the record discloses evidence fairly and reasonably tending to show that this train approached this busy crossing, made extremely hazardous by the defendant's fault, without the statutory signal or other warning, at a speed altogether too great to be consistent with the defendant's duty toward the traveling public. Indeed, the lack of the statutory signal, alone, made a *prime facie* case of negligence. *Wakefield* v. *Connecticut & Pass. Rivers R. R. Co.*, 37 Vt. 330, 86 A. D. 711; *Howe* v. *Central Vt. Ry. Co.*, 91 Vt. 485, 101 Atl. 45.

In disposing of this question, we assume that the whistle was blown at the whistling post as the defendant's evidence tends to show—of which we shall speak again. We also disregard all question with reference to the watchfulness of the engineer and fireman. It is quite apparent that, with the speed of the train what the plaintiff's evidence tended to show it was, the enginemen, however watchful they might have been, could have done nothing to avert the collision after the automobile came into their range of vision. This is made so plain by the record that this question should not have been submitted to the jury.

[2-5]  We have nothing now to do with the question of Bardis' negligence; for, if shown, it could not be imputed to his guest, the decedent. *Wentworth* v. *Waterbury*, 90 Vt. 60; 96 Atl. 334; *Lee* v. *Donnelly*, 95 Vt. 121, 113 Atl. 542. No reference, therefore, will be made to his conduct, except so far as may be necessary to a proper discussion of other questions involved. But the plaintiff had the burden of showing that the decedent, herself, was in the exercise of due care at the time of the accident. He was called upon to give evidence, direct or circum-

stantial, that would warrant the inference that she was acting in the respect under consideration as a prudent person, situated exactly as she was, would act—nothing more and nothing less. So, giving the plaintiff the advantage of a favorable construction of the evidence, it comes to this: What, by way of caution, does the law require of one who approaches a blind and dangerous crossing, while sitting as a guest, between two other persons, on the back seat of a slowly moving automobile, with its top up and driven by a competent person, over whom he has no control, and while holding in his lap a six-year old child, and is injured by a train which covers the crossing at excessive speed without giving the statutory or other warning of its approach? How is one so situated affected by the prudent-man rule? This question is new to this Court. While the rule itself does not change, the conduct necessary to fulfill its requirements varies as the circumstances do. Although the failure of the defendant to sound the whistle or ring the bell as the statute requires did not excuse the decedent from the exercise of due care for her own safety, it is a circumstance to be taken into consideration in determining whether she exercised the requisite care or not; for negligence cannot be imputed to one who is deceived by circumstances calculated to mislead a prudent man. *Boyden* v. *Fitchburg R. R. Co.,* 72 Vt. 89, 47 Atl. 409.

[6] The decedent was not required to advise or direct the operation of the car, for that might have been the worst thing she could do. *Clarke* v. *Connecticut Co.,* 83 Conn. 219, 76 Atl. 523; *Chadbourne* v. *Springfield St. Ry. Co.,* 199 Mass. 574, 85 N. E. 737. She was not bound to anticipate that Bardis would omit to exercise proper care. *Birmingham, etc., Co.* v. *Barranco,* 203 Ala. 639, 84 So. 839. It is urged that it was her duty to look and listen, and that without proof that she did, the plaintiff must fail in the action.

[7; 8] It is frequently said in unqualified terms that a traveler approaching a railroad grade crossing must look and listen for trains, or be chargeable with negligence if he is injured by one. But this so-called rule is not an independent rule of law at all; it is merely an application of the prudent-man rule. This is shown by *Manley* v. *Delaware & Hudson Canal Co.,* 69 Vt. 101, 37 Atl. 279, the case wherein the doctrine was first announced in this State, and wherein Judge Rowell, in speaking of

one approaching a railroad crossing says: "He is bound to make vigilant use of his sight and hearing to discover and avoid danger, *such use* as a careful and prudent man would make in the same circumstances." *How* watchful he must be, then, *to what extent* he must use his faculties depends upon what a prudent man would do in the same circumstances. Sometimes this is so plain that it may be ruled as matter of law; more frequently, it is a question for the jury. The rule itself, if we are to speak of it as such, is subject to exceptions. It does not apply to persons so situated as to make it wholly unreasonable to hold them to it. Passengers in a street car, for instance, are not subject to it. *Noakes* v. *New York Cent., etc., R. R. Co.,* 121 App. Div. 706, 106 N. Y. S. 522. It does not apply to very young children. *Howe* v. *Central Vt. Ry. Co.,* 91 Vt. 485, 101 Atl. 45; *Johnson's Admr.* v. *Rutland R. R. Co.,* 93 Vt. 132, 106 Atl. 682. A person being taken to the hospital in an ambulance, a prisoner being taken to jail in a patrol wagon, and any other person whose situation is such that he could not reasonably be expected to watch out, or whose situation is such that looking and listening would be a vain and fruitless precaution, is not held to any such hard and fast rule. It it applies at all to a guest on the back seat of an automobile, it does not ordinarily apply in its full vigor. Such a person may rely more or less, according to circumstances, upon the driver who is in a better position to safeguard the party. *Thrasher* v. *St. Louis & S. F. R. R. Co.,* 86 Okl. 88, 206 Pac. 212; *Thomas* v. *Illinois Cent. R. R. Co.,* 169 Iowa 337, 151 N. W. 387; *Churchill* v. *Texas Pac. Ry. Co.,* 151 La. 726, 92 So. 314; *Kokesh's Admr.* v. *Price,* 136 Minn. 207, 161 N. W. 715, 23 A. L. R. 643; *Liabraaten* v. *Minneapolis, etc., Ry. Co.,* 105 Minn. 207, 117 N. W. 423, 15 Ann. Cas. 1147.

[9-12] The question involved in such cases is a practical one; the law does not require an impossibility or a useless precaution. If the decedent, by such use of her eyes and ears as her situation admitted of, and such as a prudent person would have made, would not have discovered the peril in time to have warned the driver so he could have avoided the collision, or if her situation was such as to excuse a prudent person from the duty of active care, she was not guilty of negligence that would bar the action. *Thrasher* v. *St. Louis, etc., R. R. Co., supra.* This is saying no more than was said by this Court in *Carter* v. *Central*

*Vt. Ry. Co.*, 72 Vt. 190, 47 Atl. 797: "If, by the vigilant use of his eyes and ears—which in the circumstances is only ordinary care—the plaintiff might have discovered and avoided the danger, and omitted such vigilance, he was guilty of contributory negligence." It logically follows that if such action would not have so resulted, he was not so guilty; because negligence, in order to be contributory, in a legal sense, must be a proximate cause of the accident. *La Mountain's Admx.* v. *Rutland R. R. Co.*, 93 Vt. 21, 106 Atl. 517. It was held in *Howe* v. *Minneapolis, etc., Ry. Co.*, 62 Minn. 71, 64 N. W. 102, 54 A. S. R. 616, that a passenger in a vehicle, with no control over the driver or his management of his team, and with no knowledge that he is careless or incompetent, is not without more, and as matter of law, guilty of negligence in failing to look and listen when approaching a crossing, so as to bar his right to recover in case he is injured, by a collision.

It was said in *Weidlich* v. *New York, etc., R. R. Co.*, 93 Conn. 438, 106 Atl. 323, in speaking of a guest, "The intestate must have exercised due care, but this is the care that may be reasonably inferred from the circumstances. The guest on the rear seat of an automobile owes a very limited degree of care. He is not expected to direct the driver, nor to keep a lookout. Dangers or threatened dangers known to him, he must warn the driver of and for his failure to do so be chargeable with having proximately contributed to the accident, unless a reasonable person under all the circumstances would not have given the warning." And in *Churchill* v. *Texas & Pacific Ry. Co.*, *supra*, it was held that a guest was not required to keep a lookout. In *Shultz* v. *Old Colony St. Ry. Co.*, 193 Mass. 309, 79 N. E. 873, 8 L. R. A. (N. S.) 597, 9 Ann. Cas. 402, also speaking of a guest, Judge Rugg says: "What degree of care she should have exercised in accepting the invitation to ride, or in observing and calling to the attention of the driver perils unnoticed by him, depends upon the circumstances at the time of the injury." And in *Hermann* v. *Rhode Island Co.*, 36 R. I. 447, 90 Atl. 813, it was said that it could not be held as matter of law that one situated much as was the decedent was guilty of contributory negligence simply because she did nothing and that in many such cases the highest degree of caution would consist of inaction. On the record before us the jury might well conclude that the decedent acted the

part of a prudent person by sitting quietly in her place and leaving the precautions to the driver and those who were in a better position than she to discover and avoid the dangers.    She apparently conducted herself as a guest in her situation naturally would have, and though it does not affirmatively appear that she looked and listened, it cannot be said as matter of law that the plaintiff failed in his proof on this branch of the case, and the question was for the jury.    *Clarke* v. *Connecticut Co., supra; Chadbourne* v. *Springfield St. Ry. Co., supra; Noakes* v. *New York Cent., etc., R. R. Co., supra; Thrasher* v. *St. Louis & S. F. R. R. Co., supra; Weidlich* v. *New York, etc., R. R. Co.,* 93 Conn. 438, 106 Atl. 323; *Central of Ga. Ry. Co.* v. *Jones,* 195 Ala. 378, 70 So. 729; *Kokesh's Admr.* v. *Price, supra; Wyseur* v. *Davis,* 58 Cal. App. 598, 209 Pac. 213; *Ohio Elec. Co.* v. *Evans* (Ind. App.), 134 N. E. 519; *Hermann* v. *Rhode Island Co.,* 36 R. I. 447, 90 Atl. 813.

It is to be observed that the case in hand differs from *Boyden* v. *Fitchburg R. R. Co.,* 72 Vt. 89, 47 Atl. 409, which was the case of persons engaged in a common enterprise, and from *Wentworth* v. *Waterbury,* 90 Vt. 60, 96 Atl. 334, which was a case (if not one of common enterprise) in which the guest actually discovered the danger and gave no warning of it.

The court, in effect, instructed the jury that the cinder platform was a nuisance *per se.*   To this the defendant excepted.

The defendant insists that there was no evidence tending to show the cinder platform was erected or maintained by it.   But we cannot agree.   It was so constructed and so related physically to the station building as to indicate with more or less force that it was built as a mere extension of the station platform and was a part of it.   If it had been planked over as country station platforms usually are, no one could doubt that it was a railroad structure.   That inference could reasonably be drawn from what is shown here.   Familiar examples warranting such an inference readily come to mind.   The piazza of a house projecting into the sidewalk, the steps of a store encroaching upon the street, the cornice of a building overhanging the highway, afford evidence that they go with the property and belong to its owner.   The trestles extending from these stone sheds into the defendant's right of way, furnish some evidence, at least, that they belong to and are a part of the property to which they are attached.   So

without regard to the defendant's attitude during the trial, we hold that there was circumstantial evidence that the defendant erected and maintained the cinder platform—both the part in the highway and the part on its own land.

[13, 14]    Courts and textwriters are constantly saying that any obstruction in a highway is a nuisance.    Taken literally, this statement is too broad.    Not every object, structure, or encroachment in the highway is necessarily a nuisance.    As we saw in *Prouty* v. *Pellett*, 96 Vt. 53, 117 Atl. 373, the abutting owner has certain subordinate rights in the highway of which he may avail himself to a reasonable extent.    The right of the public to the unobstructed use of the entire width of the highway is thereby qualified.    An awning, a sign, or a bay window, extending over the sidewalk, a hitching-post, a stepping stone, a mail box, a telephone pole, a shade tree, or a silent policeman, within the limits of the highway, may or may not be a nuisance according to the circumstances.    *Wolff* v. *District of Columbia*, 196 U. S. 152, 49 L. ed. 426, 25 Sup. Ct. 198, 1 Ann. Cas. 967; *Robert* v. *Powell*, 168 N. Y. 411, 61 N. E. 699, 55 L. R. A. 775, 85 A. S. R. 673.    It all depends upon how the particular object affects the traveling public and its rights.    *State* v. *Smith*, 54 Vt. 403.    No definite classification can be made and no unbending rule can be laid down, each case must depend upon its own particular circumstances, and generally speaking presents a question for the jury. *Flynn* v. *Taylor*, 127 N. Y. 596, 28 N. E. 418, 14 L. R. A. 556; *Nutter* v. *Pearl*, 71 N. H. 247, 51 Atl. 897; *State* v *Merritt*, 35 Conn. 314; *Graves* v. *Shattuck*, 35 N. H. 257, 69 A. D. 536.

This is not saying, of course, that cases do not exist in which the question can be decided as a question of law.    That certain things in the highway are nuisances *per se* is expressly shown by *State* v. *Smith, supra;* and in *State* v. *Woodward*, 23 Vt. 92, inclosing a portion of a public common was held to be a nuisance as matter of law.    But the Court there expressly recognizes the propriety of submitting the question to the jury in proper cases, saying: ''Whether, in cases of this kind, the question should be put to the jury must depend upon the character of the nuisance charged in the indictment.''    *State* v. *Smith, supra,* also approves the doctrine of *Graves* v. *Shattuck, supra,* that the jury must determine from the circumstances of each particular case whether an object permanently placed, temporarily left, or slowly mov-

ing in a highway is a nuisance.  See, also, *Bliss* v. *Whitingham,* 54 Vt. 172, wherein the jury was instructed that one had a right to protect his piazza by a guard extending into the margin of the highway, if the jury found that this was a proper way.

[15]    Thus far we have said nothing about the statute on which the court below put the case in submitting it to the jury. G. L. 4639 provides that a person who wilfully places an obstruction or other nuisance so as to impede the passing in the highway shall incur a certain penalty.  G. L. 4641 provides that one so offending shall be liable for damages resulting from such unlawful act.  These sections were formerly R. L. 3131 and 3133, and are mere statements of the common law.  *Mann* v. *Central Vermont Ry. Co.,* 55 Vt. 484, 45 A. R. 628.  The highway here in question was four rods wide.  In ordinary circumstances, the cinder platform did not interfere with the travel.  It was an accessory of the railroad station, obviously provided for the use and convenience of all that part of the public that had business there.  It did not exclude the whole public from that part of the highway, and was to some extent at least a benefit to a part of the public.  It may or may not constitute a nuisance.  It was for the jury, when properly instructed, to say.  The exception under consideration is sustained; its prejudicial character sufficiently indicates that it was harmful to the defendant; and a reversal is required.

Our attention is called to what was said by this Court in *State* v. *Vermont Central R. R. Co.,* 27 Vt. 103, and approved in *Bacon* v. *Boston & Maine R. R. Co.,* 83 Vt. 421, 76 Atl. 128, about the right of a railroad company to build its station in the highway and the desirability of having such stations approached by a private way.  All that was there said may be true, yet the question here is not so plain that it could properly be ruled as matter of law.

The defendant excepted to the submission to the jury of the questions whether or not the whistle was blown or the bell rung as required by the statute; and it now insists that there was no sufficient evidence that these warnings were not given to entitle the plaintiff, on whom rested the burden of proof, to go to the jury on the questions.

Two recent cases deserve attention in the consideration of this question: *Rizzitelli* v. *Vestine* (Mass.), 141 N. E. 110, was

an action for damages by a boy who was struck by the defendant's automobile. It was said by the court that the testimony that no horn was heard before the accident was "merely negative and of no value as evidence that it was not sounded," the words quoted being taken from *Gibb.* v. *Hardwick,* 241 Mass. 546, 135 N. E. 868. A reference to the last-named case shows that this statement was predicated upon the fact that it did not appear that the witness was paying attention for the purpose of hearing. *Norier* v. *Hines* (N. H.), 122 Atl. 330, was an action for personal injuries by one who was struck by a train at a grade crossing while riding as a passenger in a motorcycle. It was claimed in behalf of the plaintiff that the statutory signals were not given. On this question the plaintiff called four witnesses, three of whom were passengers on the train, and the other, one who saw the cycle and train pass from a point 400 feet away. These witnesses testified that they did not remember hearing the whistle, but no one of them testified that it was not blown. Of the evidence of these witnesses, the court said that being explainable on other grounds than the failure of the signal, itself, amounted to no more than a scintilla, which reasonable men could not consider sufficient to counterbalance the direct evidence of the fact—which, as we shall see, was introduced by the defendant in that case. In addition to the witnesses referred to, the plaintiff and the driver of the cycle testified, in effect, that they looked and listened when they were at a point one hundred and fifty feet from the crossing, which, according to the court's computation, must have been after the train had passed the whistling point and the time for that signal had gone by. Several witnesses for the defendant testified that the whistle was blown as required by law, eighty rods from the crossing. It was held that there was not enough evidence of a failure to sound the crossing whistle to send the question to the jury.

[16] So far as sounding the whistle is concerned, it must be admitted that the case before us is like the case last referred to: No one, not even Bardis, testified that he listened for a whistle until the time for that signal had passed. In saying this, we assume that this train was to follow the usual and well-known custom of sounding the whistle at the 80-rod point and ringing the bell from there to the crossing. We understand, of course, that the statute gives the railroad company the choice

whether it will use the whistle or the bell to give the crossing warnings. It need not, so far as the statute is concerned, use both. But whistle or bell must be sounded from the 80-rod point until the crossing is passed. *State* v. *Woodward,* 37 Vt. 330; *Howe* v. *Central Vt. Ry. Co.,* 91 Vt. 485, 101 Atl. 45. There was no evidence or claim that such use of the whistle was made in this case. No one but Bardis testified for the plaintiff that he listened for bell or whistle. This is admitted. And Bardis did not listen until he was passing the gondola car that stood on the siding at his right. He was then about thirty or thirty-five feet from the crossing, and the train was nearly to the Provost shed—at least sixty-five rods south of the whistling post. The time for the customary crossing whistle had then passed. So if the case depended upon the whistle alone, it would be difficult if not impossible to distinguish it from the New Hampshire case.

[17] But we do not need to pass upon this question, for if there was error here, it was harmless, for there was enough evidence that the bell was not rung as required by the statute to send that question to the jury. As we have seen, if the bell is used it must be kept ringing from the whistling post to and over the crossing. Bardis testified that he listened for the bell as he passed the coal car and that it was not rung; it ought then to have been ringing, and if it had been, he might have averted the accident, though it was then a matter of fractions of a second of time and inches of space.

[18, 19] On this point, the distinction between this case and those above referred to is clear and sufficient. Here was positive testimony that the statutory signal was not given, and there was no harmful error in the submission of the question. It is urged that the defendant should not be allowed the benefit of any point in the charge that could have been, but was not covered by the motion for a verdict. To this we cannot agree. Under an exception to the overruling of such a motion, only such grounds as were specified below are for consideration here. But neither this nor any other rule precludes one from saving an available exception to the submission of any issue to the jury on any specified ground, whether covered by the motion or not. Nor is one precluded from saving a question in any proper way whether he might have saved it otherwise or not. While this precise question does not seem to have been passed upon by this Court,

the practice has been as stated above; and when by some mischance one loses the benefit of an exception saved in one way, he may have the same benefit under an exception saved in another way. Thus in *German* v. *Bennington & Rutland R. R. Co.,* 71 Vt. 70, 42 Atl. 972, the defendant lost the benefit of its exception to the overruling of its motion for a verdict, but had the same benefit under an exception to the overruling of its motion to set aside the verdict for want of evidence of the defendant's negligence or want of due care on the part of the beneficiaries of the suit. In *Dent* v. *Bellows Falls, etc., Ry. Co.,* 95 Vt. 523, 116 Atl. 83, the defendant lost its exception to the overruling of its motion for a verdict, but it was held that the question of contributory negligence, which was one ground of the first motion was saved to it by its exception to the overruling of its motion to set aside the verdict based on that ground.

[20]   Bardis was allowed to give his estimate of the speed of the train, and the defendant excepted. That the witness's situation was such that any opinion on that subject that he might give would be of little probative value and might very properly have been excluded, is apparent. But we cannot say as matter of law that it was worthless, or that it was harmful. It was within the rule applied in *Re Estate of Martin,* 92 Vt. 362, to the witness Hope on page 366 (104 Atl. 100).

[21]   We are asked to limit the reversal made necessary by the error found to the question of liability, as was done in *Griffin* v. *Boston & Maine R. R.,* 87 Vt. 278, 89 Atl. 220, and *Cross* v. *Passumpsic Fibre Leather Co.,* 90 Vt. 397, 98 Atl. 1010. As shown by the case first cited, this was but an application of the rule announced in *Marshall* v. *Dalton Paper Mills,* 82 Vt. 489, 74 Atl. 108, 24 L. R. A. (N. S.) 128, and we took occasion to say that this application should be made with caution, and to give the reason for that statement. It was thus made plain that the application of the doctrine of partial reversal when the error pertains to the question of liability depends upon the case made by the record, and that each case is to be considered on its own merits. The case in hand has some unusual features; in addition to the perilous conditions to the north of this highway, created largely by the fault of the defendant and suffered to exist by it, it had erected this cinder platform extending into the highway from the south. The court read the statute to the

jury and called their attention to the penalty therein provided. In the circumstances, therefore, though the error was one that ostensibly related to the question of liability, only, the subject-matter thereof was of such a character as might and more likely than otherwise did have a prejudicial effect on the question of damages. In such a case a full retrial should be granted under the rule announced in the Griffin case, following that in the Mc-Bride case therein referred to.

*Judgment reversed and cause remanded.*